## Simmons v. Pennsylvania Railroad Company

*Compton, Handler & Berman,* for plaintiff.
*Nauman, Smith, Shissler & Hale,* for defendant.

SOHN, J. February 21, 1955.—We have before us objections by defendant to certain interrogatories propounded by plaintiffs. They were originally 27 in number, but by excluding interrogatories which have already been answered or withdrawn, the present issue narrows down to the propriety of interrogatories nos. 12, 13, 20, 21, 24 and 25.

With respect to determination of the present issue, the complaint and answer disclose that about 10:30 p. m. on July 8, 1952, the three-track railroad of defendant was crossed by a private crossing which defendant had the duty to maintain. The crossing in

question was located about one mile north of the northern borough limits of the Borough of Halifax, in Halifax Township, Dauphin County, Pa. Barbara Humphrey and John Humphrey, her husband, were tenants upon land of the former A. W. Loomis Estate, in favor of which the private crossing was required to be maintained, and which had been established by an order of the Pennsylvania Public Service Commission. An automobile driven by Mary Lou Enders, at the request of and for the convenience of Mrs. Humphrey, attempted to cross this private crossing in an eastwardly direction, and because of the defective maintenance of the crossing, the automobile became stalled upon the tracks of defendant. The distressed occupants of the car called to plaintiff, Harry Simmons, to help them and to remove the Humphrey car from the tracks. In attempting to remove the stalled car, plaintiff, Harry Simmons, drove his automobile upon the tracks in order to tow away the Humphrey car. While Simmons was so engaged, he noticed the lights of an approaching train and ran toward it in an endeavor to signal and stop it. While he was running up the track, his wife, Grace Simmons, knowing that a train was due and for the purpose of preventing a wreck, with probable consequent injury and destruction to life and property, attempted to remove the Simmons car and while so engaged, was struck and injured by the train of the defendant. This action was brought to recover damages for the personal injury to Mrs. Simmons and for the destruction of the Simmons automobile. The complaint, as amended, alleges that the injuries were caused by the negligence of defendant in improperly maintaining the crossing, which resulted in the stalling of the Humphrey car and its attempted rescue by Simmons, and also the failure to observe an emergency stop signal given by plaintiff, Harry Simmons.

Interrogatories nos. 12 and 13 are directed to the maintenance work and its character as performed by defendant upon the private crossing during the preceding five years and for the purpose of developing facts bearing upon negligence in connection with such maintenance.

Interrogatories nos. 20 and 21 are directed to orders of the Pennsylvania Public Utility Commission, or its predecessor, the Pennsylvania Public Service Commission, describing or defining the obligation of the Pennsylvania Railroad Company as to the maintenance of the crossing. These two interrogatories are evidently for the purpose of developing just what the obligations of defendant were as to the maintenance of the crossing, and to assist in determining whether such obligations have been negligently performed.

Interrogatories nos. 24 and 25 are directed to the acts, or failure to act, of defendant to assure that the crossing was properly maintained, and are directed to the disclosure of evidence showing the care, or lack of care, with which defendant performed its duty of maintenance. Defendant's objection to answering the above-described interrogatories is based upon a contention that the negligent maintenance of the crossing, although it may have caused the stalling of the Humphrey car upon the tracks, was not the proximate cause of the injuries for which the action was brought, and that they involve matters which are irrelevant and immaterial and will not substantially aid in the preparation for trial or the trial of the case.

Plaintiffs' position is that Mrs. Simmons was injured while engaged in an attempt to rescue or prevent injury growing out of the stalling of the Humphrey car upon the tracks and that, therefore, defendant's negligence, which set in action the chain of circumstances which could have been anticipated as flowing therefrom, was one of the proximate causes

of Mrs. Simmons' injury, and evidence bearing thereon is, therefore, material in the action.

The interrogatories in question all deal with the duty of defendant to maintain a private crossing at the place where the alleged accident occurred, or the neglect thereof, and defendant maintains that any negligence in maintaining the aforesaid crossing is irrelevant and immaterial to the cause of action alleged in plaintiffs' complaint, and that the answers thereto cannot, therefore, substantially aid in the preparation or trial of the case. We have read with a great deal of interest the many interesting cases in defendant's brief relating to "foreseeability". It is defendant's contention that by no far stretch of the imagination could defendant have foreseen the consequences of its alleged act of negligence under the circumstances outlined in the complaint and the answer. However, we cannot overlook the language of the Supreme Court in Dahlstrom v. Shrum, 368 Pa. 423 (1951) that:

"We are in accord with the doctrine that foreseeability has no place when we are considering *proximate or legal cause*. Foreseeability, however, is an element, as above indicated, when the question of negligence is being considered."

In Shipley v. Pittsburgh, 321 Pa. 494, 184 Atl. 671, the suit was against the City of Pittsburgh, growing out of an alleged failure of construction and maintenance of a guard rail of a bridge, through which the driver of a motor vehicle and guest passenger fell and were injured. The Supreme Court held that municipalities are required to keep their bridges in reasonably safe condition for public travel, and having failed to do so, the question of foreseeability *in connection with proximate cause* has no application. This same doctrine was applied in Hankins, Admr., et al. v. Mack 364 Pa. 417, 72 A. 2d 268.

In the present case there is an allegation in the complaint that defendant negligently failed to comply with the order of the Pennsylvania Public Utility Commission, in that this crossing was not maintained in a safe condition for the traveling public. We believe here that the alleged defective crossing could be found to be the proximate cause of the accident, and that it could not only have been negligence to the persons originally stalled upon the crossing, but that it could also have been negligence with respect to those who came to their rescue.

The general statement of the law applicable to this situation is found in 38 Am. Jur. 738, §80:

"Section 80.—Attempt to Save Person Exposed to Peril.—The law does not ignore the reactions of the mind in tracing conduct to its consequences but recognizes as normal the inclination to answer a cry of distress by attempting to rescue the stricken one from his peril, and a wrongdoer may be held accountable for an injury sustained in an attempt to rescue his victim, although he may not actually have foreseen the attempt. Consequently, negligence that imperils life may be a wrong to the rescuer as well as to the imperiled victim. It seems to be well settled that where one person is exposed to peril of life or limb by the negligence of another, the latter will be liable in damages for injuries received by a third person in a reasonable effort to rescue the one so imperiled. The proximate cause of the injury in such a case is the negligence which caused the peril, provided the intervention to effect a rescue is not a rash or clearly imprudent act. An owner of premises who creates thereon a condition dangerous to children is liable to a third person who goes to the rescue of a child imperiled by such condition, where, under the circumstances, including the attractive and alluring nature

of the condition, the owner was obligated to use ordinary care to prevent injury to the child from such danger. Thus, where a child falls into a canal through the culpable negligence of state officers or employees, and its father thereupon plunges into the canal in an attempt to rescue his child and both are drowned, the death of both is a consequence of such negligence, and where the state has voluntarily assumed liability for the negligence or misfeasance of its officers or employees and has consented to be sued, it is answerable for the death of the father as well as that of the child. The fact, moreover, that a rescuer acted after having weighed the situation to determine whether he should follow his impulse to save the defendant's imperiled victim does not break the continuity between the defendant's negligence and the injury to the rescuer. While an attempt to rescue a person from a peril created by another's negligence does not charge the negligent person with liability if it was condemned by reason, and a rescuer who has been injured can be deprived of a recovery from the person responsible for the peril, on the ground that the dangers and desperate character of his act rendered him guilty of contributory negligence, errors of judgment are to be weighed in view of the excitement and confusion of the moment in determing whether the rescuer acted without rashness or imprudence."

Also in 38 Am. Jur. 739, §81, we find:

"Section 81.—Attempt to Save Property Exposed to Peril.—Giving due consideration to human nature, a prudent effort to preserve property from the danger to which it has been subjected by negligence is such a natural and so probable a result of the negligence, that it is reasonably to be expected. According to some authority, an owner of property owes a duty to the person whose negligence has placed the property in

peril to prevent injury, where this may be done without an imprudent exposure to personal danger. At any rate, the rule of many, although not all, courts which have considered the proposition is that a defendant who by his negligence has endangered the property of another is liable for personal injuries incurred by the owner, or person in charge of such property, in an effort to save it, if the effort is impelled by the necessity of the occasion, and is reasonably prudent under the circumstances."

The foregoing principles have been applied in Pennsylvania in the case of Corbin v. Philadelphia, 195 Pa. 461 (1900), where on page 468 the Supreme Court says:

"Assuming the city to have been guilty of negligence, was the conduct of Corbin such, in going to the rescue of Walker as to prevent a recovery by the plaintiff? In other words, is she debarred from recovery because her son was guilty of contributory negligence in voluntarily incurring peril in an effort to save the life of Walker, which had been endangered by the negligence of the city? This is an interesting and most important question, but free from difficulty, in the light of reason and the thoughtful consideration it has received from many high tribunals. A rescuer, one who, from the most unselfish motives, prompted by the noblest impulses that can impel man to deeds of heroism, faces deadly peril, ought not to hear from the law words of condemnation of his bravery, because he rushed into danger, to snatch from it the life of a fellow creature, imperiled by the negligence of another; but he should rather listen to words of approval, unless regretfully withheld on account of the unmistakable evidence of his rashness and imprudence. This conscience and reason approve, and the best judgment of thoughtful and intelligent judges has declared it to be the law of the land. Relying, as

we safely can, upon the considerate judgment of other courts on this important question raised before them, we cannot better dispose of it than by calling attention to what they have said, adding in every case our approval of what was declared to be the reason of the law as announced."

And also in Toner v. Pennsylvania Railroad Co., 263 Pa. 438 (1919), we find this statement:

"The trial judge charged the jury that if the defendant by its negligence put the two boys in serious danger of life or limb, knowing children were in the habit of playing on the tracks, that plaintiff received the injury of which he complains in an endeavor to rescue the boys from the danger in which they were placed by defendant's negligence, and the risk which plaintiff took did not appear so hazardous as to be condemned by the judgment of a prudent person, he might recover; but if any of these elements were missing the verdict should be for the defendant. This charge is in exact accord with our decision in Corbin v. Philadelphia, 195 Pa. 461; and defendant, therefore, asks us to reconsider the conclusion which we there announced. Further consideration, however, has only confirmed our opinion that what we there said is founded on both reason and authority, and hence we reaffirm it."

To the same effect is Wagner v. International Ry. Co., 232 N. Y. 176 (1921), 19 A. L. R. 1, in which Judge Cardozo stated:

". . . Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer.

The state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also to the parent who plunges to its aid. Gibney v. State of N. Y., 137 N. Y. 1, 33 N. E. 142, 19 L. R. A. 365, 33 Am. St. Rep. 690. The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path. Eckert v. L. I. R. R. Co., 43 N. Y. 502, 3 Am. Rep. 721. Cf. Matter of Waters v. Taylor Co., 218 N. Y. 248, 112 N. E. 727, L. R. A. 1917A, 347. The rule is the same in other jurisdictions. Dixon v. N. Y. N. H. & H. R. R. Co., 207 Mass. 126, 130, 92 N. E. 1030, and Bond v. B. & O. R. R. Co., 82 W. Va. 557, 96 S. E. 932, 5 A. L. R. 201, with cases there cited. Cf. 1 Beaven on Negligence, 157, 158. The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have forseen the coming of a deliverer. He is accountable as if he had. Ehrgott v. Mayor, etc., of N. Y., 96 N. Y. 264, 280, 281, 48 Am. Rep. 622."

It is our conclusion, therefore, that the alleged negligent maintenance of the crossing here in question could be one of the proximate causes of the injuries to Mrs. Simmons, and that the interrogatories in question are directed to such neglect and maintenance and are material and should be answered by defendant. We therefore make the following

*Order*

And now, February 21, 1955, it is ordered that defendant make full and complete answers to interrogatories nos. 12, 13, 24 and 25. Interrogatories nos. 20 and 21 directed to the various orders of the Pennsylvania Public Utility Commission need not be answered.