Hankins, Admr., et al. *v.* Mack, Appellant.

Argued January 12, 1950. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*Paul H. Ferguson,* with him *G. Mason Owlett,* for appellant.

*Thomas Z. Minehart,* with him *Maurice A. Bank,* for appellees.

OPINION BY MR. JUSTICE LINN, March 20, 1950:

Defendant appeals in an action for damages for the minor decedent's estate under the Survival Act of 1937 [1] and for damages for parents under the wrongful death statutes.[2] The claims were combined in one action pursuant to Pa. R. C. P. 2202. The verdicts were $30,000 for decedent's estate and $450 for the parents. A remittitur was filed reducing the former to $20,000. Judgments were entered accordingly.

The appellant contends that there is no evidence of negligence, that the minor was guilty of contributory negligence, that if recovery is sustained, the verdict was not sufficiently reduced by the court below. We apply the settled rule and take the oral evidence in its aspect most favorable to the verdict and reject all inconsistent

---

[1] Act of June 7, 1917, P. L. 447, sec. 35[b] and amendments, as amended by Act of July 2, 1937, P. L. 2755, sec. 2, 20 P.S. 772.

[2] See, inter alia, Act of April 15, 1851, P. L. 669, sec. 19, 12 PS 1601, and Act of April 26, 1855, P. L. 309, sec. 1, and amendments as amended by Act of April 1 1937, P. L. 196, sec. 1, 12 PS 1602.

inferences: *Sorrentino v. Graziano,* 341 Pa. 113, 17 A. 2d 373 (1941).

About noon-time, May 26, 1948, a bright, clear, dry day, Lawrence Hankins, aged nine years, three months, riding a bicycle southward on Lafayette Avenue, in the borough of Collingdale, was run down and killed by defendant's truck, traveling in the same direction. This avenue was thirty-one feet wide and was paved with macadam. Defendant's truck driver was familiar with the locality and knew that Lafayette Avenue for the entire square, from Bartram Avenue on the north to MacDade Boulevard on the south, was the western boundary of an area containing St. Joseph's Parochial School. The front of the school opened on Woodlawn Avenue, a street parallel to Lafayette Avenue. About midway between the north and south boundaries of this area, a private road, twelve feet wide, led from the school ground to Lafayette Avenue. As this road intersected the avenue from the east it was on the driver's left side as the truck traveled south. The minor came out on this road, traveled across the sidewalk about 11 feet wide, entered Lafayette Avenue, crossed the eastern half or northbound traffic lane of the avenue and turned southward into what was the right or southbound traffic lane. There was some evidence that he crossed the eastern half of the avenue on a southward diagonal line, but it was for the jury to find the fact. After having proceeded a distance of about 30 feet south of the road from which he entered Lafayette Avenue, he was run over by the right wheels of defendant's truck then following him. The truck driver testified that he did not see the boy until the moment of impact. There was no other traffic to interfere with a careful truck driver's view of the minor. He could not, however, have seen him until the boy emerged from the road and reached the sidewalk because on the right side of the road was

a hedge which obscured the boy until he was on the sidewalk. Immediately after the accident and before moving the truck, its foot brake was found to be defective. While the driver testified that before the accident "the brakes were in very good shape," the fact was to be found by the jury. In *Johnston v. Cheyney,* 297 Pa. 199, 203, 146 A. 551 (1929) we said: "Proof that the brakes failed to operate properly immediately following the accident was relevant on this question," i.e., whether the brakes were in proper condition. See also *Delair v. McAdoo,* 324 Pa. 392, 188 A. 181 (1936). The driver had come on Lafayette Avenue from Bartram Avenue on the north and in traveling southward crossed the center line of Lafayette Avenue to pass around some building material stored in the avenue and also a standing car, both on his right side. He testified that he was going 15 to 20 miles an hour and that he stopped his truck in about 37 feet.

The defendant contends that the minor darted out into the avenue immediately in front of the truck in circumstances in which the driver could not avoid the collision. It is true that the degree of precaution required of drivers approaching street intersections is higher than that required between intersections. The jury may have concluded from the evidence that the reason the driver did not see the minor while he was crossing the sidewalk and crossing the northbound lane in Lafayette Avenue and reaching a point 30 feet south of the road was that he was inattentive, which the jury might find to be negligence, or that his brakes were defective, as they were found to be immediately after the accident, whether he knew of the defect or not, or that both together were causes contributing to the accident. Section 435 of the Restatement, Torts, states the settled rule to be: "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that

the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." See *Shipley v. Pittsburgh*, 321 Pa. 494, 496, 184 A. 671 (1936).

It is obvious from what has been said that the minor could not be declared guilty of contributory negligence as matter of law because on that subject the evidence is not so clear that fair and reasonable men would agree about it: *Pessolano v. Philadelphia Transportation Co.*, 349 Pa. 73, 75, 36 A. 2d 497 (1944).

We have given careful consideration to appellant's contention that the verdict of $30,000 was not sufficiently reduced by the court below as well as to the argument made on behalf of the appellee that there should be no further reduction. The brief of the appellees speaks of argument in the court below that "led the jury to the conclusion that the economic worth of decedent's life to his estate had an unusually high value." Whatever was meant by the phrase "unusually high value" we find nothing in the record to support assessments of damage by distinguishing what is usual from what is unusual in dealing with elements so speculative as what the future may bring. We are limited to the evidence in the case. The boy was at the head of his class in school and was in good health; his father owned his own home, was employed as assistant plant superintendent by the Continental Distilling Corp. at a salary of $7,000 a year and had one other child. In *Murray v. Philadelphia Transportation Company*, 359 Pa. 69, 58 A. 2d 323 (1948) at page 74, we said, "In cases under the Survival Act of 1937, the jury should be directed to ascertain what the earnings of the deceased person would have been during the period of his life expectancy and to deduct from them the probable cost of his maintenance as shown by the evidence and to reduce the amount to its present worth." While the speculative difficulties always present

in arriving at proper compensation in suits for the benefit of deceased minors' estates are not to be solved by mere comparison with other cases, we may refer to the recent case of *Liguori v. Phila.*, 351 Pa. 494, 41 A. 2d 563 (1945) in which the verdict of $12,500 was sustained, and in which it appeared that the plaintiff lived for seven months and suffered severely. We think in this case the court should have reduced the verdict to $15,000 and now order judgment to be reduced to that sum; so reduced it is affirmed; the judgment in the parents' case is affirmed.