## Gibson, Admr., *v.* Hallacher, Appellant.

Argued March 9, 1954. Before Rhodes, P. J., Ross, Gunther, Wright, Woodside and Ervin, JJ. (Hirt, J., absent).

*William W. Hafer,* with him *Walter H. Katherman, Jr.* and *Fisher, Ports & May,* for appellant.

*Raymond R. Smith,* with him *Judson E. Ruch, John T. Miller* and *Luria & Still,* for appellee.

OPINION BY ROSS, J., August 26, 1954:

On January 18, 1950 Wayne C. Gibson was killed in an automobile collision while a passenger in an automobile driven by the defendant, Victor E. Hallacher, Jr. This action of trespass was instituted by Charles T. Gibson, administrator of the dead boy's estate. The case was tried before a jury, which returned a verdict for plaintiff for "funeral expenses plus $1,000.00", a total of $1,387.00. The plaintiff's motion for a new trial on the ground of inadequacy of the verdict was granted by the court below, and defendant appealed to this Court.

The granting of a new trial for inadequacy of the verdict is a matter for the sound discretion of the court below (*Fabel v. Hazlett,* 157 Pa. Superior Ct. 416, 43 A. 2d 373), and in the absence of a gross abuse of such discretion, we will not reverse. *Olson v. Swain,* 163 Pa. Superior Ct. 101, 60 A. 2d 548; *Barker v. Reedy,* 167 Pa. Superior Ct. 222, 74 A. 2d 533; *Goodman & Theise v. Scranton Spring-Brook Water Service Co.,* 352 Pa. 488, 43 A. 2d 111; *Schwartz v. Jaffe,* 324 Pa. 324, 188 A. 295. Consequently, the question before us is not whether *in our opinion* the verdict of the jury was inadequate, but solely whether the trial court com-

mitted a gross abuse of discretion in granting a new trial because *in its opinion* it was inadequate. When a trial court grants a new trial on the ground of inadequacy of verdict it does so in the interest of justice. That is the only conclusion to be drawn, whether so stated or not. Moreover, in this case it is stated in the opinion of the lower court: ". . . in order to see that justice is done the court en banc feels that a new trial should be awarded."

The negligence of the defendant is admitted, and there is no suggestion that the deceased did anything that contributed to the accident or failed to do anything that might have prevented it. At the time of his death he was 18 years of age. His first job, when he was 16 years of age, was in a silk mill, where he earned $45 a week. Two months before his death he changed his occupation to that of an apprentice with a glass-cutting company at an hourly rate of 60 cents, which a few days before his death was increased to 63 cents. He left the silk concern to go with the glass company because he felt that he would have better chances for advancement and "make more money in the end". His general condition of health was good and he had a life expectancy of 43.53 years. Certainly on the record before us we cannot find that there was a "gross abuse of discretion" by the court below in granting a new trial on the ground of inadequacy of the verdict.

Order affirmed.

———

Dissenting Opinion by Woodside, J.:

In my opinion neither courts nor counsel gave sufficient attention to the measure of damages applicable to this case. Had they done so I believe the lower court would not have granted a new trial, nor would this court have affirmed.

Although no mention was made in the trial, the briefs, or the opinions as to what damages were under the so-called "Death by Wrongful Act Statute" and what under the "Survival Statute", nevertheless, from the record, including the plaintiff's complaint, it is clear that the $1000 was awarded under the "Survival Statute."[1] The $378 award for funeral expenses is not our concern in this appeal.

It was not until 1937 that we had a constitutional Survival Act in Pennsylvania under which an action such as this could be brought,[2] and the measure of the damages which can be recovered under it is still not well defined.

The Supreme Court first suggested that the measure of damages was "the present worth of his (deceased's)

---

[1] The so-called "Death by Wrongful Act Statute" of April 15, 1851, P. L. 669, 12 PS 1601; as extended by the Act of April 26, 1855, P. L. 309 as amended, 12 PS §1602 created a new cause of action in the persons named therein.

In the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 35 (b) provision was made for another new cause of action known as a "survival action." This was declared unconstitutional because of title defect. *Strain, Administrator v. Kern*, 277 Pa. 209, 120 A. 818 (1923). The "survival action" was again allowed by the Act of July 2, 1937, P. L. 2755 and is now allowed by the Act of April 18, 1949, P. L. 512, §§601 and 603; 20 PS 320.601 and 320.603.

[2] While a student at Dickinson School of Law in 1927 the writer of this opinion made an effort to have the defective title to the 1917 Act corrected. He had a bill prepared which was introduced in the House of Representatives by the Honorable Maurice R. Metzger of Dauphin County. A written brief, prepared by the writer, was distributed to the Members of the General Assembly, but his persuasiveness was not equal to his conviction in the justness of his proposal, and the bill failed of passage. Ten years later as a Member of the House of Representatives he had the privilege of voting for the proposal and seeing it enacted into law. (Act of 1937, supra) As history has a way of repeating itself, he again finds his powers of persuasion not equal to his conviction.

loss of earning capacity during his life expectancy."
*Pezzulli v. D'Ambrosia,* 344 Pa. 643, 648, 26 A. 2d
659 (1942).

But in *Murray v. Philadelphia Transportation Company,* 359 Pa. 69, 74, 58 A. 2d 323 (1948) the Court held
that this was not the correct measure of damages, and
stated the rule as follows: "In cases under the Survival Act of 1937, supra, the jury should be directed
to ascertain what the earnings of the deceased person
would have been during the period of his life expectancy[6] and to deduct from them the probable cost of
his maintenance as shown by the evidence and to reduce the amount to its present worth.'" Footnote 6
said allowance should be made for the fact "that earning power toward the end of the average life becomes
less and less," and footnote 7 was "At simple interest
at the legal rate (citing)".

In the *Murray* case at page 75 the court cited, apparently with approval, a North Carolina case where
a verdict of $1000 was sustained and a Florida case
where the verdict was reduced from $15,000 to $2000.[3]

Justice HORACE STERN (now Chief Justice) dissented in the *Murray* case pointing out at page 82 that
"under the present decision the Survival Act will, in
an overwhelming majority of cases, not allow of any
such additional recovery at all, since it is only a small
number of persons who can accumulate estates or in
other words, who enjoy an income in excess of their
living expenses."

It seems that this court did not agree with the observation of Chief Justice STERN for within a few

---

[3] See *Altenbach et ux. v. Lehigh Valley Railroad Company,* 349
Pa. 272, 37 A. 2d 429 (1944) where there was a verdict of $500
under the "Survival Act" and an additional sum under the "Death
Act."

months it affirmed the granting of a new trial where the verdict in a survival action was $1. *Olson v. Swain,* 163 Pa. Superior Ct. 101, 103, 60 A. 2d 548 (1948). Of course, there are cases where the evidence warrants granting a new trial even under the rule adopted in the *Murray* case, and since followed in *Ferne v. Chadderton et al.,* 363 Pa. 191, 197, 69 A. 2d 104 (1949).

In the latter case the court said: "Under the Survival Statute the administratrix was entitled to recover for the loss of decedent's earnings from the time of the accident until the date of his death, and compensation for his pain and suffering during that period. Recovery may also be had for the present worth of his likely earnings during the period of his life expectancy, but diminished by the amount of the provision he would have made for his wife and children as above stated (thus avoiding duplication, citing) and diminished also by the probate cost of his own maintenance during the time he would likely have lived but for the accident (citing)."

In the case before us the deceased was killed almost instantly so the first two elements of damages mentioned above, to wit: earnings between the injury and death, and pain and suffering were not involved in the case. The trial judge's charge on the measure of damages to be allowed in this case was not questioned and appears to be correct. Among other things he properly directed the jury "to deduct (from what deceased would have earned) what it would have cost him to have maintained himself during the same period of time."

Although only 18 years of age the deceased was not contributing to his parents so there was no recovery under the Wrongful Death Statute for loss of any such payments to them.

The deceased had been a healthy young man whose tragic death undoubtedly caused a loss to his devoted parents which no amount of damages could ever compensate. But the law does not permit compensation for this grief.

Furthermore, the purpose of the legislation allowing this action is to provide compensation, not punishment. *Murray v. Philadelphia Transportation Company,* supra.

With these rules in mind, an examination of the record upon which we must rely to base our estimate of his future earnings and the expenses of his maintenance, gives little evidence that the deceased would have been likely to have had any substantial earnings in excess of living expenses. In fact it suggests he would have been one of the many who finds it difficult to earn enough to maintain himself.

The deceased stopped his formal education when he was 16 years old and a sophomore in high school. He was working in a glass cutting factory earning, according to the complaint $30 per week, and according to the evidence an average of $29.13 per week gross, not $40 as stated in the opinion of the trial court. He was employed in the shipping department at 63¢ an hour, and when working 40 hours a week without overtime was grossing only $25.20 per week or approximately $1300 a year. He was not an apprentice glass cutter, and his expectations for advancement were limited in the evidence to an increase from 60¢ to 63¢ per hour, and a statement by his parents that he took the job with the hope of becoming a glass cutter. His life expectancy was 43½ years according to the American Table of Mortality which was admitted into evidence by agreement.

Under such circumstances what would he have been likely to accumulate? Chief Justice STERN suggests

probably nothing for one in such circumstances and the experience of all of us should leave no doubt that such conclusion is correct. Dissent in *Murray v. Philadelphia Transportation Company,* supra.

If by "accumulate" is meant what would have been his estate at his death had he lived, say 43½ years more, it is much easier to establish that the verdict was excessive than that it was inadequate. For example $1000 accumulating at simple interest at the legal rate for such period of time would be over $3600. How many men working for an hourly wage, lacking formal education, accumulate an estate of that amount from their savings out of their wages? Some will, but most will not. Yet when a jury allows a sum larger than most men in similar circumstances would accumulate, we permit the lower court to say it is so grossly inadequate that it must have been "based either upon prejudice, passion or partiality or a misconception of the law."

As we have suggested, actions of this type are relatively new in Pennsylvania. We do not have a variety of cases which have been passed upon to guide us. We have no detailed discussion of the minute points involved such as Justice KEPHART'S opinion on the damages in a death action in the case of *Gaydos et al. v. Domabyl,* 301 Pa. 523, 152 A. 549 (1930).

There are many questions yet to be asked of the appellate courts and many refinements of the very briefly stated rule still to be pronounced. But it has been made clear that there must be deducted from the loss of future earnings, the probable cost of deceased's maintenance.

Measured by any standard the average laborer employed at an hourly wage just does *not* earn any substantial sum in excess of what it costs him to maintain himself. Certainly it would be unusual for such

person to accumulate over $2600, and in this case the interest alone on the verdict over the suggested life expectancy would exceed that amount.

If experience teaches us that many more people accumulate less rather than more than the jury allowed, why then did the lower court grant a new trial? I think its error is clearly expressed in its opinion. The lower court said: "When we consider the testimony offered by the plaintiff which, in view of the jury's verdict, must be accepted as true, we find that the decedent was a young man aged slightly more than eighteen years, in good health with no serious illness, sober and industrious, working in a glasscutting industry at a wage of $40.00 per week with prospects of advancement, with a life expectancy of more than forty-three years, and *a verdict of $1000.00 representing loss of future earnings,* the minds of the court en banc are brought to a clear conviction that the verdict was grossly inadequate and was based either upon prejudice, passion or partiality or a misconception of the law. Therefore, in order to see that justice is done the court en banc feels that a new trial should be awarded, and that will be the order of the court." (emphasis supplied)

First it should be noted that the court says that the testimony of the plaintiff must be accepted as true "in view of the jury's verdict." *On the question of inadequacy of the verdict,* it seems clear to me that the court must draw such inferences from the evidence relating to the amount of damages as would support the verdict, or in other words in this issue, such as would favor the defendant and not the plaintiff. I think the lower court was mistaken as to the correct rule to apply on this point.

The lower court held and said: "A verdict of $1000 representing loss of future earnings . . . was grossly inadequate." Of course, a verdict of $1000 "repre-

senting loss of future earnings" would be inadequate, but that is not the measure of damages in this case. The $1000 represents loss of future earnings *less the probable cost of maintenance reduced to present worth.*

And what does the lower court cite for authority for their position? A case tried and decided when it was generally believed the measure of damages *was* the "loss of future earnings" or more accurately "the present worth of his loss of earning capacity during his life expectancy."

*Fabel v. Hazlett,* 157 Pa. Superior Ct. 416, 43 A. 2d 373 (1945), cited by the court below and in the majority opinion of this court, was decided after the *Pezzulli* decision and before the *Murray* decision. Of course a verdict of $500 was inadequate under what was then generally followed as the law relating to the measure of damages. In affirming the lower court in that case, this court relied upon *Liguori, Admr. v. Philadelphia,* 351 Pa. 494, 41 A. 2d 563 (1945) in which again the measure of damages applied was "loss of earning capacity" without deduction for the cost of maintenance.

If the measure of damages as pronounced by the Supreme Court in the *Murray* case is wrong, (and into that debate I do not care to enter in this opinion) then either the Supreme Court or the Legislature should change it, but the lower courts should not be permitted by us to edge their way back to the *Pezzulli* rule through the medium of ignoring the rule of the *Murray* case and granting new trials for inadequacy of verdict in cases where law, reason and logic are all on the side of the jury's verdict.

It is well settled that the granting or refusal of a new trial rests in the discretion of the trial court, and it is only when the discretion has been abused that

the appellate court should reverse. *Class & Nachod Brewing Company v. Giacobello*, 277 Pa. 530, 121 A. 333 (1923). But as was said in *Jones et vir. v. Williams et al.*, 358 Pa. 559, 58 A. 2d 57 (1948) we should not abdicate our reviewing functions in such cases. "This Court, too," the Court said on page 564 "has the duty to determine from the record whether or not the jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative so that right may be given another opportunity to prevail." See also *Mix v. North American Co.*, 209 Pa. 636, 641, 59 A. 272 (1904).

As was said by Judge GUNTHER in *Perzak v. Coulter*, 171 Pa. Superior Ct. 475, 478, 90 A. 2d 256 (1952), "If the verdict bears a reasonable resemblance to damages which were proven, it is not the function of this Court to substitute its judgment for that of the jury."

If we treat the discretion of the trial courts as absolute, and at no time interfere with their granting of a new trial for inadequacy of verdict, as this court seems to be doing, then we have abdicated our reviewing function in such cases.

The measure of damages in this type of case is unique as was pointed out in the dissent in the *Murray* case, and the rules governing it have been completely ignored by the lower court in granting a new trial. In my opinion this amounts to gross abuse of discretion.

I think the lower court fell into serious error and demonstrated, in its own opinion, where and how it fell into that error; and I would reverse.