## Alleva *v.* Porter, Appellant.

Argued March 19, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ. (WATKINS, J., absent).

*Ralph S. Croskey,* with him *Croskey & Edwards,* for appellant.

*Bernard I. Shovlin,* for appellee.

OPINION BY HIRT, J., September 3, 1957:

In the late afternoon of August 19, 1954 the defendant, driving his automobile eastwardly on Rodman

Street in Philadelphia, struck a 4½ year old boy in the cartway. In this action for damages resulting from the child's death the jury found for the plaintiff in the total sum of $3,614.10—$1,114.10 under the Death Act[1]—and $2,500 under the Survival Act.[2] Defendant's motion for judgment n.o.v. was denied by the lower court in banc, but a new trial was ordered on plaintiff's application because, in the opinion of the lower court, the verdict in the Survival action was inadequate. Defendant in this appeal contends that there is error in the final orders of the court in both respects.

Rodman, a one-way street for eastbound traffic, is 20 feet wide, curb to curb. Along the north side of the street there is a pedestrian sidewalk pavement 6 feet wide, at the foot of row houses fronting on the street at an elevation of about 6 feet above it. The decedent child, with two other small children had descended the steps from the Glick home three doors west of plaintiff's house and were on the north sidewalk when defendant's car was observed as he drove it on Rodman Street eastwardly from 58th Street. Cars were parked along the south side of Rodman Street leaving an open cartway for the defendant's car of but only 13 or 14 feet wide. Defendant conceded that he did not observe the presence of any children on the sidewalk or on the paved cartway of the street. And admittedly he did not see the plaintiff child in the path of his car until after he had run over the boy at a point about 185 feet east of 58th Street. Two witnesses, one of whom was a taxi driver, who saw defendant's car but only momentarily before it struck the child, estimated his speed at 30 to 35 miles per hour; another witness testified

---

[1] Section 19, of the Act of April 15, 1851, P. L. 669, 12 PS §1601.

[2] The Act of July 2, 1937, P. L. 2755, reenacted in the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §§320.601 and 320.603.

338

that defendant apparently was intent upon looking for house numbers along the street and was not giving attention to the roadway in front of him.

No one saw the child in the cartway and it is contended on the part of the defendant that the circumstances demonstrate that the child must have suddenly darted out into the street in front of the automobile and that the defendant therefor is not liable. In the first trial a nonsuit was entered in the present case for lack of eyewitness proof of the facts. And although later taken off (Cf. *Reardon v. Smith,* 298 Pa. 554, 148 A. 860) the case for recovery was close; the question of defendant's negligence was barely for the jury. Cf. *Jones v. Carney,* 375 Pa. 32, 99 A. 2d 462; *Murray, Admr. v. P. T. C.,* 359 Pa. 69, 70, 58 A. 2d 323. But in the light of the verdicts defendant is chargeable with negligence in failing to observe the children and their movements on the sidewalk or in the street, and (under the circumstances) in failing to have his car under such control as to be able to stop on the shortest possible notice. Under the verdict we must take it that defendant should have observed the children on the sidewalk and accordingly should have anticipated that in their play they might run into the cartway. "Where there is reason to apprehend that children might run into a place of danger there is a duty imposed on an operator of an automobile to have his car under such control that it can be stopped on the shortest possible notice of danger": *Van Buren v. Eberhard,* 377 Pa. 22, 28, 104 A. 2d 98. A finding of negligence may be based upon the inattention of the operator of a motor vehicle in not seeing a child if such child is visible on the highway. *Hankins, Admr. et al. v. Mack,* 364 Pa. 417, 72 A. 2d 268; *Schneider v. Sheldon,* 380 Pa. 360, 110 A. 2d 226.

Under the Wrongful Death Acts the jury awarded $342.10 for funeral expenses and the sum of $750 as the amount that the parents would have received from the child's earnings until he reached his majority over and above the cost of maintaining the boy. The father was a dock worker for the Pennsylvania Sugar Company and the home was owned by him. In the light of the parents' station in life, an allowance of $750 as the present worth of the profit which the parents would receive from the boy's earnings beginning more than thirteen years later was adequate at least.

And in our view the verdict for $2,500 under the Survival Act cannot be disturbed. Under the circumstances it was for the jury to determine the life expectancy of the child and what his total earnings would be during the period, less the probable cost of his maintenance; and to reduce the amount of the finding to its then present worth. The effect of a computation of damages at their present worth, based upon interest at the legal rate, in calculating the worth of this boy's economic life to his estate, may not be minimized. Cf. the persuasive dissenting opinion of Judge WOODSIDE in *Gibson, Admr. v. Hallacher,* 176 Pa. Superior Ct. 539, 107 A. 2d 449. And in our view the discretion to be exercised in estimating how long this boy would have lived, save for the fatal accident, and the amount of his lifelong probable net earnings, was for the jury in this case and not for the trial court.

In *Hankins, Admr. et al. v. Mack,* supra, Mr. Justice LINN observed that "the speculative difficulties always present in arriving at proper compensation in suits for the benefit of deceased minors' estates are not to be solved by mere comparison with other cases." We nevertheless may not shut our eyes to the fact that in no appellate court case, in our State, has the award of a new trial for inadequacy of verdict been affirmed

where the verdict in a survival action was as much as $2,500.[3]

From a reading of the cases of our Supreme Court, it is at once apparent that there is no fixed rule by which future damages resulting from the death of a minor can be measured with any degree of certainty. The utter lack of uniformity indicates that because of necessarily uncertain factors each case must rest upon its own facts and much must be left to the discretion of the jury in determining the amount. Our appellate courts have been alert to reduce an excessive verdict and especially to the extent that it is obviously punitive because of the high degree of negligence chargeable to the defendant. On the other hand our Supreme Court has not been critical of juries in cases where the verdict has been small, by comparison, because a fair preponderance of the evidence barely charges the defendant with actionable negligence in any degree. In *Carpenelli v. Scranton Bus Co.*, 350 Pa. 184, 38 A. 2d 44, our Supreme Court said: ". . . when the evidence is equally divided in weight, or, a fortiori, when the preponderance of testimony is clearly with the defendant and the verdict rendered for the plaintiff, while small, is substantial, the problem becomes one of an entirely different nature, for in such event it can no more rea-

---

[3] In *Fabel, Admr. v. Hazlett*, 157 Pa. Superior Ct. 416, 43 A. 2d 373, the verdict for the parents was $272.50 and for the estate under the Survival Act for the death of an eleven year old girl was but $500. The grant of a new trial for inadequacy was affirmed. Similarly an award of new trials was affirmed in *Olson v. Swain*, 163 Pa. Superior Ct. 101, 60 A. 2d 548; there the verdicts were for $393.95 in the wrongful death action and for but $1 in the survival action. The youth was 13 years old. So also in *Gibson, Admr. v. Hallacher*, 176 Pa. Superior Ct. 539, 107 A. 2d 449, the order of a new trial was approved by the majority of this court where the verdict under the survival act was but $1,000 for the death of an 18 year old boy gainfully employed.

sonably be said that the plaintiff recovered too little than that he should not have recovered at all; therefore, in such a case, it is just as likely, or more likely, that the granting of a new trial would constitute an act of injustice to the defendant rather than one of justice to the plaintiff." Cf. *Patterson et al. v. Palley Mfg. Co.*, 360 Pa. 259, 61 A. 2d 861.

The present judicial attitude in this class of cases was recently indicated in *Layman v. Gearhart*, 389 Pa. 187, 132 A. 2d 228. In that case the defendant, driving his automobile "very fast" struck an eight-year-old boy in the cartway after clearing the intersection, and there, as here, there were no eyewitnesses to the actual striking of the child. The lower court entered a compulsory nonsuit and the Supreme Court on appeal in affirming the refusal to take it off said: "Appellants failed to establish a prima facie case by their failure to shed any light on the crucial issue of the case, i.e. the physical location of the minor child in relation to the highway at the time he was struck by appellee's automobile. There would be sound reason for sending this case to the jury if it had been shown that the boy was struck while alongside the road, or in the ditch, or even in the road itself if it were also proven that appellee, had he been reasonably alert, would have been able to avoid hitting him. But this is not the case. Appellants have merely offered evidence tending to place the boy on the school grounds at an unascertained distance from the highway *before* the accident. *There is, moreover, a complete lack of evidence indicating where, how or when the boy appeared in the path of the oncoming automobile.* From the evidence adduced, it is as reasonable to assume that the boy dashed into the road or fell upon it as it is to assume that the accident was caused solely by appellee's negligent management of his vehicle. The evidence clearly fails to

342

describe, picture or visualize what actually happened and any verdict based upon it would necessarily be the result of mere speculation, guess and conjecture on the part of the jury."

Accordingly, the refusal of judgment for the defendant n.o.v. is affirmed; the order awarding new trials is reversed and judgments are directed to be entered on the verdicts.