498 A.2d 950

**Georgette JUSTICE and Richard Mays, Administrators of the Estate of Rafiki Mays, Deceased, and Georgette Justice and Richard Mays, in their own right, Appellants,**

v.

**BOOTH MATERNITY CENTER and Phillip Glass, M.D.**

Superior Court of Pennsylvania.

Argued Oct. 9, 1984.

Filed Sept. 20, 1985.

530

Mark I. Bernstein, Philadelphia, for appellants.

Donald J. Sweeney, Philadelphia, for Booth, appellee.

Before ROWLEY, McEWEN and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from an order sustaining preliminary objections in the nature of a demurrer to appellants' amended complaint.[1] Appellants raise four issues in their brief:

1. May the Administrators of the estate of a stillborn child and the father of the child, in his own right, recover damages for the death of the child during childbirth caused by the negligence of the attending obstetrician?

2. May the Administrators of the estate of a stillborn child and the father of the child, in his own right, recover damages for the breach of the warranty of due care in the delivery of the child or for the lack of informed

---

1. Appellants are (1) Richard Mays, the father of the deceased child, (2) Georgette Justice, the mother of the deceased child, and (3) Mays and Justice as Administrators of the estate of the deceased child.

consent as to the procedures used in the delivery of the child?

3. May the father of a stillborn child, in his own right, recover damages for the emotional distress caused by the death of his child resulting from the negligence of the attending obstetrician where the father witnessed the entire procedure and the death in question?

4. In light of the provisions of the Abortion Control Act of 1982, 18 Pa.C.S. 3201 *et seq.*, and the decisions in thirty-one other states, is the decision in *Carroll v. Skloff*, 415 Pa. 47, 202 A.2d 9, and its progeny controlling in medical malpractice by an obstetrician during delivery which results in death three minutes prior to the delivery of the stillborn child?

We affirm.

Appellant Georgette Justice, while pregnant with the decedent child, was under the care of appellee Phillip Glass, M.D., who was associated with appellee Booth Maternity Center. The pregnancy was uneventful except for a minor fall which occurred on February 4, 1982, when Ms. Justice was nine months pregnant. Two days later, she was admitted to Booth Maternity Center. During delivery, complications arose which resulted in the stillbirth of the child.

Appellants, Georgette Justice and Richard Mays, on their own behalf and on behalf of the estate of their stillborn child, filed a complaint which alleged negligence and breach of warranty on the part of appellees with regard to the delivery of the decedent.

We note at the outset that our study here is subject to the well established precept that "[i]n reviewing a demurrer we must accept as true all well-pleaded facts and the reasonable inferences therefrom. A demurrer can only be sustained if it is certain that no recovery is permitted. Any doubt must be resolved against sustaining the demurrer." *Douglas v. Schwenk*, 330 Pa.Superior Ct. 392, 393, 479 A.2d 608, 609 (1984) (citations omitted).

The principal inquiry of this appeal is whether the estate of a stillborn child may recover in a civil action at law for damages which occur as a result of negligent pre-natal care. Appellants acknowledge that our Supreme Court has specifically disallowed such suits and stated that, "whereas an action will lie on behalf of an infant *born alive* for damages resulting from injury tortiously inflicted during the infant's fetal existence, neither a survival action nor a death action will lie in the case of a stillborn infant." *Scott v. Kopp*, 494 Pa. 487, 490, 431 A.2d 959, 961 (1981) (emphasis in original). *See also Marko v. Philadelphia Transportation Co.*, 420 Pa. 124, 216 A.2d 502 (1966); *Carroll v. Skloff*, 415 Pa. 47, 202 A.2d 9 (1964). Appellants, nevertheless, argue that the Pennsylvania Legislature has, through the Abortion Control Act,[2] extended to the unborn the equal protection of the laws thus permitting the estate of the instant decedent to bring this wrongful death and survival action.[3]

Our review of the legislative history of the Act reveals that, as originally drafted, the statute contained a section which expressly permitted a wrongful death action to be brought, but only on behalf of destroyed ova which were fertilized *in vitro*.[4] That section stated:[5]

§ 3216. Private action for injunctive relief and damages.

**2.** Abortion Control Act, Act of June 11, 1982, P.L. 476, No. 138, 18 Pa.C.S. § 3201 *et seq.*

**3.** Section 3202(c) of the Act states:
(c) **Construction.**—In every relevant civil or criminal proceeding in which it is possible to do so without violating the Federal Constitution, the common and statutory law of Pennsylvania shall be construed so as to extend to the unborn the equal protection of the laws and to further the public policy of this Commonwealth encouraging childbirth over abortion.

**4.** We note that the author of Senate Bill 742 specifically stated that "the wrongful death [action] only related to the *in vitro* fertilization section." *See* House Journal, page 2347, December 9, 1981.

**5.** This section was contained in Senate Bill 742 which, although passed by both Houses of the Legislature, was vetoed by the Governor on December 23, 1981. The Bill which eventually became the present Abortion Control Act was Senate Bill 439 which was signed by the Governor on June 20, 1982.

(a) Petition.—Any adult person or any agency or association by its representative may file a petition in a court of competent jurisdiction alleging that a person or persons has violated this chapter, is about to violate this chapter or is in the course of a continuing violation of this chapter, or, under the circumstances provided in section 3213(g)(2) (relating to prohibited acts), may institute an action for wrongful death. The petition shall be verified but the statements therein may be made upon information and belief.

(b) Guardian ad litem trustee.—The petition may seek appointment of the petitioner, or of some other named person, or of a person to be named within the discretion of the court, as guardian ad litem for any child or class of children, or any unborn child or class of unborn children, regardless of whether that child or class of children already has parents or guardians. If the petition alleges a wrongful death, an impending violation of section 3213(g)(1), or brings an action under section 3213(g)(2), it may seek appointment of the petitioner, or of some other named person, or of a person to be named within the discretion of the court, as a public trustee. The court may revoke such an appointment at any time, after notice and hearing, upon its own motion or upon the motion of an intervenor for collusion or lack of prosecution.

(c) Relief.—The petition may seek injunctive relief or actual damages or exemplary damages or any combination thereof. In making determinations with regard to temporary or preliminary injunctive relief, the court shall presume that any violation of this chapter constitutes irreparable injury and is against the public interest.

After prolonged, intense debate in the House of Representatives, however, section 3216 was amended to remove the wrongful death provisions. As a result, the present Abortion Control Act provides no express civil remedy to a fetus for any tortious or criminal acts on the part of those who perform abortions.

■ We are of the view that the legislature deleted the wrongful death action from the act because it wished to retain in this Commonwealth the policy of denying access to the courts by those who have not first been born alive. Therefore, we must reject appellants' attempt to sue appellees as representatives of the estate of the deceased child.

■ Appellant Mays, on his own behalf, also seeks damages for (1) the negligent delivery of the child, (2) breach of a warranty of successful delivery, (3) lack of "informed consent as to the procedures used in the delivery of the child," and (4) negligent infliction of emotional distress. We note, initially, that Mays' negligence action is fatally deficient because he avers no injury to himself as a result of appellees' allegedly tortious actions. His argument, therefore, is meritless.

■ As for his allegation of lack of informed consent, [t]he law in this Commonwealth is that where a *patient* is mentally and physically able to consult about his condition, in the absence of an emergency, *his* "informed consent" is a prerequisite to a surgical operation by his physician. An operation without such informed consent is a technical assault, making the physician liable for any injuries resulting from the invasions, regardless of whether the treatment was negligently administered.

*Cooper v. Roberts*, 220 Pa.Superior Ct. 260, 264, 286 A.2d 647, 649 (1971) (emphasis supplied) (citations omitted). Appellant Mays, however, was not the patient in this case and his body was not in any fashion "invaded" by appellees. Rather, an action based upon the concept of informed consent would only be the prerogative of appellant Justice because she experienced the alleged "technical assault." Accordingly, we find that the lower court properly rejected this claim.

Mays also asserts that appellee breached an alleged warranty to successfully deliver the child. Because the allegations of fact upon which appellant premises this assertion

do not establish the existence of such a warranty, however, we must also find this claim to be meritless.

■ Finally, Mays seeks to recover for appellee's negligent infliction of emotional distress. In order to state a cause of action for negligence resulting in emotional harm, a plaintiff must allege bodily harm or other compensable damage. *See Banyas v. Lower Bucks Hospital,* 293 Pa.Superior Ct. 122, 128–29, 437 A.2d 1236, 1239 (1981); Restatement (Second) of Torts § 436A (1977). Here, appellant has averred no physical harm. We therefore find that he has failed to state a cause of action for negligent infliction of emotional distress.

Accordingly, we affirm the order of the lower court sustaining appellees' preliminary objections.

Affirmed.

McEWEN, J., files a concurring opinion.

McEWEN, Judge, concurring:

My distinguished colleagues of the majority have quite accurately set forth in their thoughtful opinion the law as it currently exists in this Commonwealth. I am compelled, however, to formally express disagreement with the presently prevailing view that the heirs and estate of a stillborn child may not bring a cause of action under the Wrongful Death Act[1] and the Survival Act[2].

---

1. 42 Pa.C.S. § 8301

**§ 8301. Death Action**

**(a) General rule.**—An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no action for damages was brought by the injured individual during his lifetime.

**(b) Beneficiaries.**—Except as provided in subsection (d), the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere. The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth.

It was almost a half century ago that our Supreme Court ruled in *Berlin v. J.C. Penney Co.*, 339 Pa. 547, 16 A.2d 28 (1940), that an action would not lie for injuries negligently inflicted upon a child when in the womb. Twenty years later, however, the Supreme Court in *Sinkler v. Kneale*, 401 Pa. 267, 164 A.2d 93 (1960), overruled *Berlin* when it (1) considered the claim of an infant who was born mongoloid, allegedly as a result of injuries sustained when she was at the age of one month past conception, (2) permitted that cause of action to lie against the alleged tortfeasor, and, (3) with regard to the claim that the fetus must be viable [3] specifically declared:

> As for the notion that the child must have been viable when the injuries were received, which has claimed the attention of several of the states, we regard it as having little to do with the basic right to recover, when *the fetus is regarded as having existence as a separate creature from the moment of conception.*

*Id.*, 401 Pa. at 273, 164 A.2d at 96 (emphasis supplied).

The clarity of this pronouncement was such that the United States Third Circuit Court of Appeals, in *Gullborg v. Rizzo*, 331 F.2d 557 (3rd Cir., 1964), decided that the Penn-

---

(c) **Special damage.**—In an action brought under subsection (a), the plaintiff shall be entitled to recover, in addition to other damages, damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

(d) **Action by personal representative.**—If no person is eligible to recover damages under subsection (b), the personal representative of the deceased may bring an action to recover damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

**2.** § **8302. Survival action**
All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.

**3.** Viability has been defined as "that stage of fetal development when the life of the unborn child may be continued indefinitely outside the womb by natural or artificial life-supportive systems." Black's Law Dictionary (5th ed., 1979).

sylvania Supreme Court would adopt the view[4] that the heirs of a stillborn infant may bring an action under Pennsylvania's wrongful death statute—a view that had already been taken in at least nine other states[5]. That prediction fell, however, far short since our Supreme Court refused to follow the course that the Circuit Court had designated and instead enunciated the rule that no cause of action under the wrongful death and survival statutes accrues to the heirs or estate of a stillborn child. *See Marko v. Philadelphia Transportation Co.,* 420 Pa. 124, 216 A.2d 502 (1966); *Carroll v. Skloff,* 415 Pa. 47, 202 A.2d 9 (1964). That ruling has remained the law of this Commonwealth through the present time. *See Scott v. Kopp,* 494 Pa. 487, 431 A.2d 959 (1981).

The Supreme Court in *Carroll, supra,* reasoned that the legislature had, by its reference in the Wrongful Death Act to intestacy distribution, imposed by implication the restriction that only the heirs of a person who dies subsequent to a live birth may commence a wrongful death action. The Court employed, however, a somewhat elusive logic to reach that conclusion for, while the Court correctly opined that the Intestate Act required that a person could not become an intestate heir unless born, *see* 20 Pa.C.S. § 2104(4)[6], it

---

**4.** Where an issue of first impression is presented to a federal court in a diversity action, that court must determine how the state supreme court would rule in a similar case. *Herman v. Welland Chemical, Ltd.,* 580 F.Supp. 823 (M.D.Pa., 1984).

**5.** *See Gorke v. Le Clerc,* 23 Conn.Sup. 256, 181 A.2d 448 (1962); *Worgan v. Greggo and Ferrara, Inc.,* 50 Del. 258, 128 A.2d 557 (1957); *Hale v. Manion,* 189 Kan. 143, 368 P.2d 1 (1962); *Mitchell v. Couch,* 285 S.W.2d 901 (Ky., 1955); *State of Maryland, Use of Odham v. Sherman,* 234 Md. 179, 198 A.2d 71 (1964); *Verkennes v. Corniea,* 229 Minn. 365, 38 N.W.2d 838 (1949); *Rainey v. Horn,* 221 Miss. 269, 72 So.2d 434 (1954); *Poliquin v. MacDonald,* 101 N.H. 104, 135 A.2d 249 (1957); *Stidam v. Ashmore,* 109 Ohio App. 431, 167 N.E.2d 106 (1959).

**6.** § 2104. **Rules of descent**
   The provisions of this chapter shall be applied to both real and personal estate in accordance with the following rules:
*    *    *    *    *    *
   **(4) After-born persons; time of determining relationships.**

does not logically follow that a stillborn fetus may not have intestate heirs. The instant decedent does not seek to recover under the Wrongful Death Act as an intestate heir for, admittedly, such an action would be barred by statute. *See* 42 Pa.C.S. § 8301(b). Rather, it is the intestate heirs of the fetus who seek to recover pursuant to the Act. Thus, any apparent bar arising from the intestacy statute to a recovery by the heirs of the decedent is illusory.[7]

It has been also said that an infant born deformed or handicapped represents a considerable burden to the parents or the community and that, therefore, prudent policy requires that the parents of such a handicapped child be permitted to seek financial recovery—but that, on the other hand, parents of a stillborn child should be precluded from such a recovery since the stillborn child does not represent such a burden to either parents or community. Such an assertion overlooks the jurisprudential seed of our study— the tort itself. The wrong triggers the recompense and it must be emphasized that a common law negligence action and statutory wrongful death action contemplate differing recompense. The plaintiff in a negligence suit seeks, *inter alia*, damages based upon the expense of future medical care and other future losses which will be incurred as a result of the conduct of the tortfeasor. On the other hand, in a wrongful death action, the victim is not the beneficiary of the litigation since the heirs of the victim seek compensation for damages incident to their loss of the life of the decedent. As deserving of recovery as may be the parents of a child born handicapped due to negligence, that worthy decision does not compose a rationale to distinguish and deny recovery by the heirs of a stillborn child of the

> Persons begotten before the decedent's death but *born* thereafter, shall take as if they had been born in his lifetime. (emphasis supplied)

7. Moreover, it should be further noted that even those states which do not allow the heirs of the stillborn fetus to bring their cause of action do not dispute the existence of the estate or the standing heirs. *Cf. Justus v. Atchison,* 19 Cal.3d 564, 581 n. 14, 139 Cal.Rptr. 97, 108 n. 14, 565 P.2d 122, 133 n. 14 (1977) ("For present purposes we shall assume that the parents of a stillborn fetus can be its heirs.")

pecuniary losses which they incur as a result of the death of that child.

The further assertion that live birth reduces the issues of causation inherent in cases involving the death of a stillborn has a certain ring of inconsistency. Initially, it should be noted that the factor of difficulty in establishing the causation element of a negligence claim should not bar the very claim itself. Moreover, the difficulty that was to confront the plaintiff in *Sinkler v. Kneale, supra,* in proving causation, did not prevent the Supreme Court from remanding the case for the presentation of medical evidence upon causation of injuries alleged to have been sustained when the child was but one month in development in the womb.

Nor may one assert with consistency that the nature of the damages in a wrongful death action and a survival action for a stillborn child is of so speculative a nature that such suits must be enjoined, while permitting the calculation of such damages when the case concerns the death of an infant born alive. Indeed, the courts of this Commonwealth have traditionally accepted a certain degree of uncertainty with regard to the evaluation of damages in wrongful death and survival cases in which the decedent is a minor. *See Hankins v. Mack,* 364 Pa. 417, 72 A.2d 268 (1950); *Alleva v. Porter,* 184 Pa.Super. 335, 134 A.2d 501 (1957). It would also seem that, however valid may be the claim that the parents of a stillborn child are fully compensated for their losses through recovery in their own independent actions, it is beyond dispute that in actions brought under the survival statute, the estate of the child would not be able to recover for the loss of the earning power of the decedent, from the age of twenty-one years through his estimated working life span (less, of course, personal maintenance expenses).[8] *See Slaseman v. Myers, supra.* Thus, a potentially substantial pecuniary loss may not, under the present law, be recouped.

**8.** Where the decedent is a minor, however, damages for loss of future earning power are limited to the earnings the decedent would have generated during his adult life. *Prince v. Adams,* 229 Pa.Super. 150, 324 A.2d 358 (1974).

Those authorities who advocate the prerequisite of a living being assert that such a requirement, though arbitrary, is necessary. While the majority has, in *Scott v. Kopp, supra,* expressed this notion in especially convincing fashion, it is, nonetheless, the minority—as well as vanishing—view, for, as the insightful dissent in *Scott v. Kopp* notes, the majority of jurisdictions have concluded that *viability* is the point where a *"living person"* is deemed to exist.[9] One particularly thoughtful analysis of this issue

**9.** The Dissenting Opinion of Justice Larsen in *Scott* listed twenty-seven jurisdictions which have ruled in favor of permitting recovery for the death of a stillborn child:

See *Eich v. Town of Gulf Shores* [293 Ala. 95], 300 So.2d 354 (Ala.1974); *Hatala v. Markiewicz,* 26 Conn.Sup. 358, 224 A.2d 406 (1966); *Worgan v. Greggo and Ferrara, Inc.* [50 Del. 258], 128 A.2d 557 (Del.Super.1956); *Simmons v. Howard University,* 323 F.Supp. 529 (D.D.C.1971); *Porter v. Lassiter,* 91 Ga.App. 712, 87 S.E.2d 100 (1955); *Chrisafogeorgis v. Brandenberg,* 55 Ill.2d 368, 304 N.E.2d 88 (1973); *Britt v. Sears,* 150 Ind.App. 487, 277 N.E.2d 20 (1972); *Hale v. Manion,* 189 Kan. 143, 368 P.2d 1 (1962); *Mitchell v. Couch,* 285 S.W.2d 901 (Ky.1955); *Odham v. Sherman,* 234 Md. 179, 198 A.2d 71 (1964); *Mone v. Greyhound Lines, Inc.,* 368 Mass. 354, 331 N.E.2d 916 (1975); *O'Neill v. Morse,* 385 Mich. 130, 188 N.W.2d 785 (1971); *Verkennes v. Corniea,* 229 Minn. 365, 38 N.W.2d 838 (1949); *Rainey v. Horn,* 221 Miss. 269, 72 So.2d 434 (1954); *White v. Yup,* 85 Nev. 527, 458 P.2d 617 (1969); *Poliquin v. MacDonald,* 101 N.H. 104, 135 A.2d 249 (1957); *Stidam v. Ashmore,* 109 Ohio App. 431, 167 N.E.2d 106 (1959); *Evans v. Olson,* 550 P.2d 924 (Okl.1976); *Libbee v. Permanente Clinic,* 268 Or. 258, 518 P.2d 636 (1974); *Presley v. Newport Hospital,* 117 R.I. 177, 365 A.2d 748 (1976); *Fowler v. Woodward,* 244 S.C. 608, 138 S.E.2d 42 (1964); *Moen v. Hanson,* 85 Wash.2d 597, 537 P.2d 266 (1975); *Baldwin v. Butcher,* 155 W.Va. 431, 184 S.E.2d 428 (1971); *Kwaterski v. State Farm Mutual Auto Insurance Company,* 34 Wis.2d 14, 148 N.W.2d 107 (1967); *Wascom v. American Indemnity Corporation,* 383 So.2d 1037 (La.App.1980); *Salazar v. St. Vincent Hospital,* 95 N.M. 150, 619 P.2d 826 (1980); *Vaillancourt v. Medical Center Hospital of Vermont, Inc.* [139 Vt. 138], 425 A.2d 92 (Vt.1980).

It may be noted that of the foregoing twenty-seven jurisdictions: (1) Georgia holds: a fetus becomes a child when it is "quick" or capable of moving in its mother's womb. *See Porter v. Lassiter, supra;* and (2) Rhode Island holds: a stillborn child, whether viable or nonviable, is a person within the meaning of the Wrongful Death Act. *Presley v. Newport Hospital,* 117 R.I. 177, 365 A.2d 748 (1976);

Since *Scott,* four jurisdictions have joined the majority view. *See Summerfield v. Colleen,* 144 Ariz. 467, 698 P.2d 712 (1985); *Community Hospital v. Williams,* 482 A.2d 394 (D.C.App., 1984); *Volk v. Balda-*

presents in quite compelling fashion what might well be the consensus of the thirty-one jurisdictions which compose the prevailing view:

> In terms of a right of action, no justifiable distinction exists, for example, between the stillbirth of a foetus in an advanced stage of development and the birth alive of a comparable foetus with death shortly ensuing. Protection from tortious injury should be afforded an interest in being born alive and in living a full and complete life after birth. 'The right of personal security consists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health, and his reputation. Life is the immediate gift of God, a right inherent by nature in every individual ...' And assuming the validity of a right to live and all that existence entails, [the] conclusion [which utilizes birth as the instant when legal rights accrue under the Wrongful Death and Survival Acts] contradicts [the] thesis for permitting a child born alive to recover for prenatal injury—namely that a tortfeasor should account for the direct consequences of his wrongful conduct.

Del Tufo, *Recovery for Prenatal Torts: Actions for Wrongful Death*, 15 Rutgers L.Rev. 61, 77 (1960) *quoting* Blackstone's Commentaries, Book 1, 30. *See also Rainey v. Horn, supra*, 221 Miss. at 281, 72 So.2d at 439.

zo, 103 Idaho 570, 651 P.2d 11 (1982); *O'Grady v. Brown*, 654 S.W.2d 904 (Mo., 1983).

The following cases establish birth as the legally recognizable demarcation in their jurisdictions: *Justus v. Atchison, supra; Stern v. Miller*, 348 So.2d 303 (Fla., 1977); *McKillip v. Zimmerman*, 191 N.W.2d 706 (Iowa, 1971); *Danos v. St. Pierre*, 402 So.2d 633 (La., 1981); *Kuhnke v. Fisher*, — Mont. —, 683 P.2d 916 (1984); *Drabbels v. Skelly Oil Co.*, 155 Neb. 17, 50 N.W.2d 229 (1951); *Graf v. Taggert*, 43 N.J. 303, 204 A.2d 140 (1964); *Endresz v. Friedberg*, 24 N.Y.2d 478, 301 N.Y.S.2d 65, 248 N.E.2d 901 (1969); *Gay v. Thompson*, 266 N.C. 394, 146 S.E.2d 425 (1966); *Hamby v. McDaniel*, 559 S.W.2d 774 (Tenn., 1977); *Nelson v. Peterson*, 542 P.2d 1075 (Utah, 1975); *Lawrence v. Craven Tire Co.*, 210 Va. 138, 169 S.E.2d 440 (1969).

The following jurisdictions have not yet ruled on the issue: Alaska, Arkansas, Colorado, Hawaii, Maine, North Dakota, South Dakota, Texas and Wyoming.

It remains, nonetheless, the role of this Court and its members to pronounce the law as it presently exists and it is for that reason that I concur in the ruling of the majority.

