Linda PEARSALL, Admx., et al.,

v.

EMHART INDUSTRIES, INC., et al.

Civ. A. No. 82–3080.

United States District Court,
E.D. Pennsylvania.

Dec. 7, 1984.

Beasley, Hewson, Casey, Colleran, Erbstein & Thistle by James E. Colleran, and Sarah M. Thompson, Philadelphia, Pa., for plaintiffs.

LaBrum & Doak, Perry S. Bechtle and Michael E. McGilvery, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

KATZ, District Judge.

Post-trial motions before this Court contest a judgment of $2,926,875 based on a jury verdict finding defendants Emhart Industries and Notifier Company liable to plaintiff Linda Pearsall for $2,451,938 (to which the Court added delay damages in the amount of $474,937) as a result of a fire in her home that killed her husband and two children. The jury found that the heat and smoke detectors manufactured by the defendants' predecessors in interest were defective and negligently manufactured, and that the defects and negligence were substantial factors in causing the deaths of plaintiff's family members.[1]

Defendants claim that the plaintiff failed to meet her burden of proof that the alarms failed to work properly on the eve-

**1.** The jury answered the following special interrogatories:

1(a). Did defendants manufacture a defective product?
Yes _X_    No _·_
1(b). Did defendants act negligently toward plaintiff?
Yes _X_    No ___
If you answer question 1(a) and (b) "no" then plaintiff cannot recover and your deliberations are completed. If you answer either question 1(a) or 1(b) "yes", go on to question 2.
2. Was the negligence of defendants or the defect in their product a substantial factor in bringing about the harm to plaintiff?
Yes _X_    No ___
If you answer question 2 "no" then plaintiff cannot recover and your deliberations are completed. If you answer this question "yes," go on to question 3.
3. If you answered questions 1(b) and 2 "yes," was any contributory negligence on the part of the Pearsalls a substantial factor in bringing about the harm?
Yes ___    No _X_
If you answer question 3 "yes," go on to question 4.

If you answer question 3 "no," go on to question 5.
4. ...
5. If you answered question 2 "yes," did the Pearsalls voluntarily and knowingly assume the risk in using products?
Mrs. Pearsall:
Yes ___    No _X_
Mr. Pearsall:
Yes ___    No X
6. What damages do you award plaintiff on her direct claim for emotional damages arising from seeing her husband and children at the scene of the fire?
  $400,000.00
7. What damages do you award plaintiff on her claim for wrongful death of the following?

| | |
|---|---|
| Paul Pearsall | $183,065.21 |
| Paula Pearsall | $150,000.00 |
| Laurie Pearsall | $150,000.00 |

8. What damages do you award plaintiff on her claims as survivor of the following?

| | |
|---|---|
| Paul Pearsall | $350,000.00 |
| Paula Pearsall | $597,664.00 |
| Laurie Pearsall | $621,209.00 |

ning of the fire, that the court incorrectly charged the jury on damages for the childrens' wrongful death, that the verdict on damages in the children's survival action should be set aside because the jury misunderstood the testimony of plaintiffs' economist, that the court erred in submitting plaintiff's claim for emotional distress to the jury, that the court should not have sent certain exhibits into the jury room, that the court erred in charging the jury on plaintiff's "malfunction theory", that the plaintiff's counsel's closing argument was improper, that the verdict was excessive, that delay damages are unconstitutional and improper, that the court should not have permitted plaintiffs' counsel to read a portion of a HUD pamphlet critical of heat detectors, that the court should not have allowed into evidence pamphlets with testing instructions, and that failure to warn could not have caused the harms to the plaintiff.

I find that the trial record amply supports plaintiff's claims that these badly designed and dangerous alarms did not work when there was a fire. Plaintiff provided sufficient evidence for a jury to conclude that defendants' predecessor in interest manufactured defective products, did so negligently and that the defects and negligence were substantial factors in causing the deaths of the plaintiff's husband and children.

■ Defendants argue that, with regard to the instruction as to damages for the wrongful death of plaintiff's two children, the court committed two errors. First it is alleged that the court charged the jury that it could award monetary damages for the expected pecuniary value of the children's services and emotional support beyond the age of majority. Secondly, defendants argue that parents may not be awarded damages for the loss of emotional support of their children. Under Pennsylvania law, absent a strong factual presentation to indicate continued support beyond the age of majority, parents may recover in an action for the wrongful death of a minor child compensation for services and support only up until the age of majority. *See Sinn v. Burd*, 486 Pa. 146, 151–152 n. 3, 404 A.2d 672 n. 3 (1979); *Gaydos v. Domabyl*, 301 Pa. 523, 152 A. 549 (1930). The Court's charge in this case was that only support prior to the age of majority was compensable in a wrongful death action.[2] The instruction on damages for services and emotional support immediately followed the court's instruction that the plaintiff could be awarded sums of money that the two

2. The relevant portion of the Court's charge on wrongful death damages is as follows:

Question 7 deals with damages to the plaintiff for her claim for Wrongful Death; that is, her claim that she, Mrs. Pearsall, has, herself, been injured by the deaths of her husband and children.

These claims are separate from her claim for damages under the Survival Act, which I will explain to you when we get to Question 8.

The damages, however, in Questions 6, 7 and 8 should not overlap or duplicate each other.

There are several elements of damage that you may award plaintiff on her claim for Wrongful Death in answering Question 7.

First, Mrs. Pearsall is entitled to be awarded an amount which will cover all funeral and burial expenses. Mrs. Pearsall is also entitled to be awarded in Question 7 the value of all sums that Mr. Pearsall would have contributed for her support between the time of his death, July 19, 1980, and the end of his life expectancy.

Similarly, Mrs. Pearsall is entitled to be awarded the value of all sums that you find that the two children would have contributed to her support between the time of their deaths and the age of majority; that is, between 1980 and the time they would have turned 18.

In addition to these contributions that the decedents would have made to her support, Mrs. Pearsall is entitled to be awarded in Question 7 an amount which will fairly and adequately compensate her in a dollar amount for the value of the services and emotional support that the decedents would have given her, had they lived. This includes the provision of physical services, such as work around the house, and the provision of emotional support.

You should consider in awarding Mrs. Pearsall damages not only for the day-to-day activities, but also the ongoing loss of these elements that the decedents would have provided her, had they lived.

Mrs. Pearsall is entitled to be compensated for the loss of contributions that the decedents would have made for her shelter, food, clothing, et cetera, as well as the monetary value of emotional support that she lost.

children would have contributed to her support up until the time of their majority.

■ In addition, the Court's instruction that the plaintiff could be awarded compensation for "the monetary value of the emotional support that she lost" was not in error. *See Thomas v. Conemaugh Black Lick Railroad,* 133 F.Supp. 533, 543 (W.D. Pa.1955) *aff'd* 234 F.2d 429 (3d Cir.1956) (care, training, advice, guidance); *Gaydos v. Domabyl,* 301 Pa. 523, 530, 152 A.2d 549, 552 (1930) (superintendence, attention, care, education).

■ Defendants next claim that the jury award on the children's survival action should be overturned due to the likelihood that the jury was confused by the testimony of the plaintiff's economist, Dr. Jerome Staller. At one point in his testimony, Dr. Staller testified that the two children, Paula and Laurie Pearsall, would be expected to earn $567,664 and $591,209 respectively if they finished high school but did not go on to college. Later, on cross examination, Dr. Staller "conceded" that fringe benefits should not have been included in the above figures. The jury awarded $597,664 and $621,209 in the survival action—exactly $30,000 higher for each child than Dr. Staller's estimate. Defendant argues that the jury must have accepted Dr. Staller's estimates without making any deletion for the incorrectly included fringe benefits and that this decision was based upon confusion. The law, however, is well established that courts should not overturn jury verdicts absent exigent circumstances such as a case of manifest and extreme abuse of the jury's function. *See Bruce Lincoln-Mercury, Inc. v. Universal C.I.T. Credit Corp.,* 325 F.2d 2, 21–22 (3d Cir.1963). Moreover a court will not inquire into the purely internal workings of the jury's decisional processes on the mere suspicion of confusion. *See Domeracki v. Humble Oil & Refining Co.,* 443 F.2d 1245, 1247 (3d Cir.1971), *cert. denied,* 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971); *Beron v. Kramer-Trenton,* 402 F.Supp. 1268, 1271 n. 5 (E.D.Pa.1975), *aff'd,* 538 F.2d 318 (3d Cir.1976). Since the jury was bound nei-

ther by Dr. Staller's estimate nor his concessions, I will not upset the jury's award in this case.

■ Nor do I deem the jury's overall verdict excessive. An award of damages in a wrongful death action will be set aside only if "clearly beyond reason" or if it is the "result of a misconception of the law, or of prejudice, partiality, or sympathy." *Jenkins v. Pennsylvania Railroad Co.,* 220 Pa.Super. 455, 289 A.2d 166 (1972). The losses which were proved in this case fully justify the amount of the verdict.

Defendants argue that plaintiff's claim for emotional distress should not have been submitted to the jury since the plaintiff did not witness the deaths of her husband and children from the fire. In recent years Pennsylvania has expanded the right of a bystander who "witnesses" a traumatic event to recover for emotional distress. In *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979) the Pennsylvania Supreme Court held that a mother who saw her own child struck and killed by a negligently operated vehicle could recover. The Court's decision placed much emphasis on its conclusion that the injuries to the bystander were foreseeable. The Supreme Court has applied a three factor test to determine whether injuries to a bystander from witnessing a wrongful death are foreseeable:

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Yandrich v. Radic,* 495 Pa. 243, 247, 433 A.2d 459, 461 (1981); *Sinn v. Burd,* 486 Pa. 146, 170–71; 404 A.2d 672, 684 (1979) (quoting from *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968)). In *Sinn,* the Court found that "[w]here the

bystander is a mother who witnessed the violent death of her small child and the emotional shock emanated directly from personal observation of the event, we hold as a matter of law that the mental distress and its effects is a foreseeable injury." 486 Pa. at 173, 404 A.2d at 686. The Court specifically noted that it was not considering the case of a parent who was merely notified of an accident but was not present at the scene of the injury or death. 486 Pa. at 173 n. 21, 404 A.2d at 686 n. 21.

In *Yandrich v. Radic*, 495 Pa. 243, 433 A.2d 459 (1981) the Pennsylvania Supreme Court addressed the issue it had expressly left open in *Sinn*—whether a parent who was neither a witness to the accident nor in the immediate vicinity thereof, but arrived at the scene after his son had already been taken to the hospital could maintain an action for negligent infliction of emotional distress. Applying the foreseeability standards enunciated in *Sinn* the Court found that the father could not bring such an action. The Court found that the plaintiff was not located near the scene of the accident and that the shock to the plaintiff did not result from the sensory and contemporaneous observance of the accident. 495 Pa. at 247, 433 A.2d at 463.

■ I find that the facts of the instant case support a claim by Mrs. Pearsall for infliction of emotional distress. Upon arriving home, Mrs. Pearsall witnessed the fire-fighters bringing the blaze under control. She testified that she stood near the bodies of her husband and children at the scene of the fire. She arrived at the hospital shortly before the ambulance arrived and witnessed the bodies of her husband and daughter being carried off the ambulance. She testified that she couldn't pick up her daughter because "she [Laurie] was real hot." Mrs. Pearsall also offered substantial evidence proving her claims of subsequent emotional distress.

■ That Mrs. Pearsall arrived at the scene of the fire shortly after her husband and children had actually died in no way diminishes the foreseeability of her emotional distress. Upon arriving home she witnessed the fire and had no idea whether her husband and children were alive or dead. She saw and later touched the bodies of her family as the fire that took their lives was still smoldering. Her emotional distress was not caused merely by others notifying her of the accident. Instead, plaintiff's shock and emotional distress resulted from the direct impact upon her senses of the fire and its aftermath. I am satisfied that the emotional distress of this mother witnessing the fire and its carnage is foreseeable to a manufacturer of defective alarms and, therefore, meets the standards enunciated in *Sinn v. Burd* and *Yandrich v. Radic. See also Bliss v. Allentown Public Library*, 497 F.Supp. 487 (E.D.Pa.1980) (direct visual observation of accident unnecessary to state claim for negligent infliction of emotional distress); *General Motors Corp. v. Grizzle*, 642 S.W.2d 837 (Tex.App.1982) (mother arriving upon scene moments after accident may recover for infliction of emotional distress); *Nazaroff v. Superior Court*, 80 Cal.App.3d 553, 145 Cal.Rptr. 657 (1978) (same).

■ Defendants next argue that the Court should not have allowed certain heat alarms admitted into evidence to go to the jury during its deliberations. I exercised my discretion to allow the devices to go out with the jury because they were admitted into evidence and would be useful to the jury in its deliberations. *See Wilson v. Pennsylvania Railroad Co.*, 421 Pa. 419, 432 n. 8, 219 A.2d 666, 673 n. 8 (1966). Defendant has failed to show persuasively that any impermissible experimentation took place. *See Lanza v. Poretti*, 537 F.Supp. 777 (E.D.Pa.1982). Furthermore, the jurors had seen at least some of the heat alarms disassembled and reassembled repeatedly in open court and, therefore, could not have been misled into believing that the alarms in the jury room were necessarily in the same condition as when they left the control of defendants' predecessor in interest.

■ Defendants also argue that the Court should not have allowed plaintiffs to

proceed on both a strict liability theory, in part, based on an unexplained malfunction, and a negligence theory. Defendants' reliance on *Thompson v. Anthony Crane Rental, Inc.*, 325 Pa.Super. 386, 473 A.2d 120 (1984) for the proposition that the two theories are incompatible is misplaced. In *Thompson,* the plaintiff introduced evidence to show not only that the lessor of the crane was liable due to a defect in the crane, but also that the operator of the crane was himself negligent. The Pennsylvania Superior Court held that the crane operator's negligence may have been the cause of the accident rather than any alleged defect in the crane noting "[w]here the plaintiff's strict liability case depends not upon the actual proof of a defect, but *only* upon the mere occurrence of a malfunction, it is inconsistent to permit̀ him [the plaintiff] to proceed on the strict liability ground where he also advances a theory of human intervention which purportedly caused the harm." 473 A.2d at 125 (emphasis added). In the instant case, plaintiff's strict liability theory did not rely only upon an unexplained malfunction. To the contrary, plaintiff produced significant evidence to demonstrate the existence of specific defects in the smoke and heat detectors. In addition, unlike the situation in *Thompson,* the same defendants were legally responsible for both the allegedly negligent act and the defect. Therefore, regardless of whether the plaintiff succeeded on the negligence theory or the product liability theory, the defendants are liable.

Defendants next allege that certain comments made by the plaintiff's counsel in his closing arguments were so inflammatory as to require a new trial. Upon review of the record, I find that the plaintiff's counsel's comments were within the bounds of reason and not unduly inflammatory or prejudicial. *See Smith v. Evans,* 421 Pa. 247, 251, 219 A.2d 310, 312 (1966).

■ Defendants' arguments that the imposition of delay damages pursuant to Pennsylvania Rule of Civil Procedure 238 violates constitutional principles are without merit. Federal and state courts have found delay damages compatible with both federal and state constitutional law. *See Insurance Federation of Pennsylvania, Inc. v. Supreme Court of Pennsylvania,* 669 F.2d 112 (3d Cir.1982); *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147 (1981), *appeal dismissed,* 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982). Plaintiff's non-constitutional arguments against imposition of delay damages are equally without merit. Defendant has failed to cite any authority to support its argument that delay damages are inappropriate for a case such as the one before this court.

■ Defendants also allege that the admission into evidence during the redirect examination of its expert witness of a quotation from a publication by the United States Department of Housing and Urban Development (HUD) was in error due to its irrelevancy and prejudicial impact. The portion of the publication read to the jury was critical of heat alarms.[3] Admission of the statement critical of heat detectors followed the earlier admission into evidence over plaintiff's objection of a statement by the same witness on cross-examination that HUD approved non-battery, plug-in smoke detectors. The contested statement was relevant to rebut the defendants' earlier suggestion that HUD had approved of the kind of devices involved in this case. In addition, the two statements taken together were not prejudicial to the defendant.

Furthermore, defendants may be said to have "opened the door" to evidence on the subject of HUD's views with regard to smoke and heat detectors thereby justifying the admission into evidence on redirect of the HUD excerpt. *See United States v. Johnson,* 502 F.2d 1373, 1376 (7th Cir. 1974), *cert. denied,* 420 U.S. 977, 95 S.Ct. 1402, 43 L.Ed.2d 657 (1975); *United States v. Winston,* 447 F.2d 1236, 1239–41 (D.C.

---

**3.** The article stated, "Heat detectors are also available but they sense the temperature of the fire after it has already reached the flaming stage and they will not give early enough warning. They may be cheaper, but they will not give the protection you need."

Cir.1971); *United States v. Lowe*, 234 F.2d 919, 922 (3d Cir.1956), *cert. denied*, 352 U.S. 838, 77 S.Ct. 59, 1 L.Ed.2d 56 (1956); Cleary, McCormick's Handbook of the Law of Evidence § 57 (2d ed. 1972); 1 Wigmore, Evidence § 15 (Tillers rev. 1983).

Defendants further object to the Court's allowing plaintiff's counsel to show defendants' expert witness, Gustav Hubert, two exhibits during cross-examination. These exhibits consisted of portions of instruction manuals which accompanied heat detectors sold to consumers by defendants. Neither of the instruction booklets, however, covered the particular smoke or heat detectors purchased by the plaintiff. The two booklets were used by the plaintiffs to contradict Mr. Hubert's testimony that the instruction manuals sent out with heat detectors sold to plaintiff contained a certain method for testing whether the detector was in working order. On direct examination, Mr. Hubert testified that although he had no instruction booklets with him he recalled that they contained instructions regarding the specific testing method. On cross-examination, he could not explain why these two manuals did not have the same information on the testing procedures alleged to be in the earlier booklets which he claimed did accompany the product sold to plaintiff. Defendants argue that neither of the instruction manuals should have been admitted since a proper foundation had not been established. In addition, defendants argue that one booklet which was issued after the sale of the heat detectors to the plaintiff should have been excluded pursuant to Rule 407 of the Federal Rules of Evidence.

■ Both of the instruction booklets were sufficiently authenticated. As to one of the manuals, Mr. Hubert testified that although it provided instructions for a different model than the ones purchased by the plaintiff the equipment was nonethe-

less similar. As to the other instruction manual a sufficient foundation was laid at a sidebar conference and through a deposition to show that it was issued by one of the defendants for similar heat alarms. Furthermore, the questioning of Mr. Hubert with regard to the presence or absence of the instructions for testing alarms in these booklets was probative as to his credibility and the reliability of his memory, especially in light of the fact that defendants had failed to produce the instruction booklets for the heat detectors purchased by the plaintiff.

■ Defendants' argument that the excerpts from the instruction manuals were inadmissible under Federal Rule of Evidence 407 is without merit. Rule 407 says that evidence of subsequent remedial measures may not be used to prove negligence or culpable conduct.[4] Neither of the two instruction manuals included evidence of subsequent remedial measures taken by the defendants or their predecessors in interest. Both manuals served the purpose of impeaching the credibility of what appeared to be a rather extraordinary claim of good memory in remembering what old instruction booklets said, even though the booklets themselves were unavailable and inconsistent with those instruction booklets which were available.

■ Defendants next argue that the court erred in not making a finding that the alarms were "unreasonably dangerous." In addition, the defendants assert that the alarms were not dangerous. Under Pennsylvania law, before submitting a products liability case to a jury, a court must itself make a determination that if the facts alleged by the plaintiff were true, the imposition of strict liability against the defendant would be justified. The issue of whether the risk of loss should be placed upon a defendant is a question of law to be

---

**4.** Federal Rule of Evidence 407 provides in full: When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in con-

nection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

decided with an eye toward the "social policy" underlying Pennsylvania products liability law. *See Hammond v. International Harvester Co.*, 691 F.2d 646, 650 (3d Cir.1982); *Baker v. Outboard Marine Corp.*, 595 F.2d 176, 181 (3d Cir.1979); *Azzarello v. Black Brothers Co.*, 480 Pa. 547, 558, 391 A.2d 1020, 1025 (1978). A court need not explicitly tell the jury of its finding that the facts alleged by the plaintiff, if true, show that the product was unreasonably dangerous. *See Wieder v. Towmotor Corp.*, 568 F.Supp. 1058, 1061 (E.D.Pa. 1983), *aff'd*, 734 F.2d 9 (3d Cir.1984). Such a statement would only serve to confuse the jury, without contributing significantly to its deliberations. In fact, instructing the jury that the product must be found unreasonably dangerous may be reversible error under Pennsylvania law. *See Baker*, 595 F.2d at 176; *Azzarello*, 480 Pa. at 559–60, 391 A.2d at 1027. The court finds, based on the evidence introduced by the plaintiff, that the alarms were unreasonably dangerous. The purpose of a smoke or heat detector is to alert persons to life threatening danger thereby allowing them to escape. These alarms were unreasonably dangerous and defective in their design, their failure to include appropriate instructions for use and their malfunctioning in a fire. As a matter of social policy the risk of death due to defective heat and smoke detectors should be placed upon their manufacturer.[5]

Defendants finally claim that plaintiff may not recover on a failure to warn theory since she testified that she had never received an instruction manual. Defendants allege that the plaintiff failed to offer sufficient evidence to show how additional warnings or reminders would have made a difference. I find that the plaintiff offered sufficient evidence to support a jury's verdict that she had received insufficient instructions relating to the use and testing of her smoke and heat detectors and that this failure to warn proximately caused the deaths of her husband and children.[6]

Having found none of defendants' claims meritorious, defendants' post-trial motions are denied.

---

5. *Lobianco v. Property Protection, Inc.*, 292 Pa. Super. 346, 437 A.2d 417 (1981), cited by defendants, is inapposite. In that case, the Court held that the manufacturer of a defective burglar alarm was not liable for property losses sustained in a burglary. *Lobianco*, however was expressly limited to the issue of strict liability for property damage and did not address the issue of the liability of fire alarm manufacturers for personal injury or death. 292 Pa.Super. at 362, 4 A.2d at 426.

6. Among the evidence plaintiff provided to support her claim that insufficient warnings and testing instructions proximately caused the deaths of her husband and children were that she and her family did in fact test the alarms to the extent they were instructed to do so and that the children even practiced firedrills. This and other evidence supports a reasonable inference that additional warnings or instructions would have averted or mitigated the catastrophe caused by the fire. *See Conti v. Ford Motor Co.*, 743 F.2d 195 (3d Cir.1984).