## Flurer v. Pocono Medical Center

*Clifford Haines,* and *William H. Robinson Jr.,* for plaintiff.

*Shawn P. Phillips,* for Stephen L. Seagrave-Daly, M.D. and Pocono Obstetrical & Gynecological Associates.

*Michael P. Perry,* for Pocono Medical Center.

*Bruce L. Coyer,* for Monroe Emergency Inc.

*Todd S. Miller,* for Monroe Emergency Physicians.

MILLER, *J.,* August 7, 1992—This is a medical malpractice action brought by plaintiffs in their own right and as administrators of the estate of their unborn son against the defendants for personal injuries sustained at defendant Pocono Medical Center in East Stroudsburg, Monroe County, Pennsylvania. Defendant Monroe Emergency Physicians, P.C. provides emergency medical and health care services at PMC. Defendant Stephen L. Segrave-Daley, M.D. is a physician licensed to practice in Pennsylvania; he is employed by defendant Pocono Obstetrical and Gynecological Associates, P.C. and, in the course of his practice, treats patients at PMC both on a regular and on an emergency basis.

On May 24, 1990, plaintiff Jennifer Flurer (plaintiff-mother) sustained physical injuries after being involved in a three-car automobile accident. At the time, plaintiff-mother was 30-weeks pregnant.

Following the accident, she was transported to PMC and admitted to the emergency room, suffering from abdominal pain. An attempt was made by PMC and/or Monroe Emergency personnel to assess the condition of plaintiff-mother's fetus by taking and evaluating the baby's heart beat.

At one point in the emergency room, the approximate time being unclear from the complaint, a fetal heart beat of 140 beats per minute was obtained. Subsequently, at 7:45 p.m., a fetal heart rate of 144 beats per minute was found by defendant-doctor. At 8:20 p.m., a fetal heart monitor was placed on plaintiff-mother only to reveal that baby had died in utero.

Plaintiff-mother was then placed on medication in order to induce delivery of the child. Robert T. Flurer (baby Flurer) was delivered stillborn on May 26, 1990, his death apparently caused by placental abruption which had resulted in fatal injuries to his lungs, tissues, nerves, blood vessels, brain and heart.

Plaintiff-mother and plaintiff Robert P. Flurer (plaintiff-father) brought action against the several defendants[1] in this case seeking damages for injuries proximately caused by the defendants' negligence, most particularly by the defendants' failure to begin use of a fetal monitor to follow baby Flurer's condition prior to 8:20 p.m. on

---

1. Following the accident, plaintiffs filed a complaint alleging negligence against the other drivers involved. That action is docketed to *Jennifer L. Flurer, Robert P. Flurer & Estate of Baby Boy Flurer v. Michael Kolarik & Sharon Shreve,* No. 2186 Civil 1990, Court of Common Pleas of Monroe County. Currently, a motion to consolidate that negligence action with the matter instantly before us is pending.

May 24, 1990. Plaintiffs seek recovery under the Wrongful Death Act, 42 Pa.C.S §8301, the Survival Act, 42 Pa.C.S §8302, and for damages resulting from the defendants' negligent infliction of emotional harm upon the plaintiffs.

Defendant Monroe Emergency responded to plaintiffs' complaint by filing an answer and new matter on March 12, 1992. Defendants PMC, doctor and Pocono Ob-Gyn, however, have filed numerous and varied preliminary objections to plaintiffs' complaint, a number of which overlap in both substance and relief requested.

Doctor and Pocono Ob-Gyn have filed preliminary objections in the nature of a demurrer or, in the alternative, a motion to strike, to Count III of plaintiffs' complaint. In addition, doctor and Pocono Ob-Gyn request, by way of preliminary objections, that we strike plaintiffs' claim for punitive damages from Count I and references to "gross negligence" and "recklessness" contained in Count II of the complaint or, in the alternative, that we require plaintiffs to plead their causes of action with more specificity in these particular respects as required by the Pennsylvania Rules of Civil Procedure. Finally, defendants doctor and Pocono Ob-Gyn request that we strike certain averments relating to alleged negligent behavior set forth in paragraph 21 of plaintiffs' complaint as being conclusory in nature or, alternatively, that we require plaintiffs to file a more specific pleading.

Defendant PMC has also filed preliminary objections in the nature of a demurrer to Count III of plaintiffs' complaint. In addition, PMC requests this court to strike the plaintiffs' claim for punitive damages and references to "gross negligence" as already set forth above.

Briefs have been filed by the parties, and oral arguments were heard by this court on April 6, 1992. The issues are ripe for resolution, and we are ready to proceed. Where appropriate, we will attempt to combine our discussion

and resolution of identical issues raised by the several parties presently before us.

## DEMURRER TO COUNT III—

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Defendants PMC, doctor and Pocono Ob-Gyn (defendants) have all filed preliminary objections in the nature of a demurrer to Count III of plaintiffs' complaint, asserting that plaintiffs have failed to set forth in Count III all of the material elements necessary to sustain a cause of action for negligent infliction of emotional distress. Specifically, they challenge the plaintiffs' right to recover upon this theory under the facts set forth, maintaining that, in contravention of current Pennsylvania case law, plaintiffs have not and, moreover, cannot allege the occurrence of a specific, identifiable act of negligence on the part of defendants or the observance of a traumatic event brought about as a result of the defendants' negligence which would have triggered their emotional distress and supported their right to recover.[2] Second, in support of the instant preliminary objections, defendants claim that plaintiffs have failed to set forth averments of physical injury or physical manifestations of their emotional injuries required to support recovery for negligent infliction of emotional distress in Pennsylvania.

Preliminary objections in the nature of a demurrer test the legal sufficiency of plaintiffs' complaint. The standard

---

2. As part of this preliminary objection, defendants also maintain that a cause of action for negligent infliction of emotional distress cannot be predicated upon the negligent *failure* of the defendants to act. We have found no cases, in our extensive research, in which the characterization of defendants' negligence as an omission was determinative of this issue, resulting in a dismissal of the cause of action.

to be used by the court in ruling on a demurrer is whether the complaint indicates on its face that the claim being made cannot be legally sustained. *County of Allegheny v. Commonwealth*, 507 Pa. 360, 490 A.2d 402 (1985). The court must determine before it may sustain the demurrer that, upon the facts averred, it is certain that the law will not permit the recovery being sought. *Kyle v. McNamara & Criste*, 506 Pa. 631, 487 A.2d 814 (1985). Any doubt must result in a denial of the demurrer. *Id.* In examining the complaint, the court shall accept as true all well-pled, relevant and material facts as well as all inferences fairly deducible from those facts, but not conclusions of law or unjustified inferences. *County of Allegheny v. Commonwealth, supra; Firing v. Kephart,* 466 Pa. 560, 353 A.2d 833 (1976).

The preliminary objections currently before us raise specific issues relating to the material elements of a cause of action for negligent infliction of emotional distress in Pennsylvania, touching upon both the reasonable foreseeability of the harm as it relates to the definition and imposition of a duty of due care upon the defendants as well as upon the nature of the injury itself.

Before turning to the resolution of these issues, this court finds that it will aid in the legal analysis of those issues and promote a better understanding of that analysis if we begin with a discussion of the history of the cause of action for negligent infliction of emotional distress in Pennsylvania.

It must be noted that this discussion concerns what are commonly referred to as bystander recovery cases. That is to say, the plaintiff is making a claim for the emotional distress suffered as a result of plaintiff having been a bystander to, rather than a direct victim of, the defendant's negligent act. The issues and opinions revolve around the identification of those circumstances under which a plaintiff may properly recover for such an injury and involve broad public policy concerns as

well as the practicalities of proving such claims and the avoidance of fraudulent claims.

The following summary of the legal development of this cause of action in Pennsylvania is based upon the discussion by Justice Nix in his plurality opinion in *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979).

Initially, Pennsylvania courts would only permit a plaintiff to recover for negligently inflicted emotional distress where plaintiff was able to allege the occurrence of some "physical impact" upon plaintiff which, in turn, had allegedly caused the emotional injuries for which plaintiff sought recovery.

The "impact rule," according to Justice Nix, "prevented the complaining party from recovering damages for injuries resulting from fright, nervous shock, or mental or emotional disturbance, unless this distress was accompanied by physical impact—i.e. physical injury—upon the person of the complaining party." *Id.* at 153, 404 A.2d at 675.

In *Niederman v. Brodsky,* 436 Pa. 392, 261 A.2d 84 (1970), the Pennsylvania Supreme Court abandoned the physical impact rule and adopted what popularly became known as the zone of danger test in bystander recovery cases.

The court held that a plaintiff could recover for shock, mental pain and physical injuries attendant to the defendant's negligent act although physical impact was lacking "where the plaintiff was in danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact." *Sinn v. Burd, supra* at 153, 404 A.2d at 676, quoting *Niederman, supra* at 413, 261 A.2d at 90.

In *Sinn, supra,* the court was confronted with a new set of facts and a new theory of recovery. There, a mother had witnessed the violent death of her young daughter who was struck by an automobile in front of the family's home. The mother suffered no physical impact, nor was

she within a zone of danger, having observed the accident from a location near the front door of her home.

Under this set of circumstances, the court found the zone of danger test unduly restrictive with potentially unfair results. Justice Nix wrote:

"This new awareness of the unfairness of the zone of danger requirement in these cases is based upon the implicit acceptance that the emotional impact upon a parent witnessing the killing of a minor child is at least as great and as legitimate as the apprehension that is inspired by a plaintiff being personally within the zone of danger." *Id.* at 156-157, 404 A.2d at 677.

The opinion continued:

"Applications of the zone of danger test to situations where the death or serious injury of a child is witnessed by a parent creates the very evil that the test was designed to eliminate, i.e. arbitrariness. It would bar recovery depending on the position of the plaintiff at the time of the event, and ignores that the emotional impact was most probably influenced by the event witnessed—serious injury to or death of the child—rather than the plaintiff's awareness of personal exposure to danger." *Id.* at 157-158, 404 A.2d at 678.

The court, under the facts alleged by Mrs. Sinn, replaced the zone of danger test with traditional concepts of negligence, duty, proximate cause and foreseeability. The analysis thus shifted to whether or not plaintiff's injuries were reasonably foreseeable.

Relying upon *Dillon v. Legg,* 68 Cal. 2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968), the first case to allow recovery to a plaintiff in Mrs. Sinn's situation, Justice Nix identified three factors which would be determinative of whether plaintiff's injury was reasonably foreseeable:

"(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.

"(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident as contrasted with learning of the accident from others after its occurrence.

"(3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Id.* at 170-171, 404 A.2d at 685, quoting *Dillon*, 69 Cal. Rptr. at 80, 441 P.2d at 920.

Under the facts of *Sinn*, the court had little difficulty in reaching the conclusion that the emotional distress suffered by the mother upon witnessing the violent death of her young daughter was reasonably foreseeable. And so the court held:

"Where the bystander is a mother who witnessed the violent death of her small child and the emotional shock emanated directly from personal observation of the event, we hold as a matter of law that the mental distress and its effects is a foreseeable injury." *Id.* at 173, 404 A.2d at 686.

However, few cases, including the instant matter, have fit neatly into the holding of *Sinn*. As the years passed, the courts of this Commonwealth were presented with numerous opportunities to interpret and apply the *Sinn* holding to a number of varied factual situations.

Recalling the facts of foreseeability identified by the *Dillon* court and adopted by the Supreme Court of Pennsylvania in *Sinn v. Burd, supra,* we note that factors one and three have given courts little reason to struggle with their interpretation. By way of contrast, however, the second indicia of foreseeability, dealing with a "sensory and contemporaneous" observance of death or injury to a loved one has been the focus of numerous judicial opinions. Indeed, the parties in the instant case, by way of their preliminary objections to plaintiffs' cause of action for negligent infliction of emotional distress, are requesting

this court to interpret this factor under the particular facts of this case.

There is little question that the parents of baby Flurer were near him at the time of his death, and the closeness of the familial relationship is obvious. However, the following question is raised by defendants: have plaintiff-mother and plaintiff-father, in making their claims for damages arising from the death of baby Flurer en ventre sa mere, sufficiently alleged a "sensory and contemporaneous observance" of an "accident" resulting in "direct emotional impact?" In other words, were plaintiffs' injuries sufficiently reasonably foreseeable to the defendants to justify the imposition of liability?

The defendants would have the court answer this question in the negative, resulting in a sustaining of their demurrer. The defendants argue that, because baby Flurer died in utero, plaintiffs observed nothing. Defendants argue that plaintiffs are unable to identify a distinct traumatic event which triggered their emotional response and made it reasonably foreseeable to defendants; therefore, their cause of action must fail.

The defendants' argument, however, may be too simplistic. Courts obviously have not readily accepted the proposition that events transpiring in utero cannot be "observed" by the parents within the parameters of the legal principles governing this type of legal action. If this were the case, legal actions involving parental claims for emotional distress caused by the negligent handling of their unborn child, often referred to as "mismanaged childbirth cases,"[3] would never survive the challenge of preliminary objections.

To the contrary, however, legal reporters are replete with opinions recognizing, at least tacitly, the conceptual legitimacy of the parents' claims. True, the cause of action may be dismissed, sometimes for failure to allege

---

3. *Haught v. Maceluch,* 681 F.2d 291 (5th Cir. Tex).

a physical manifestation of the emotional injury, but the concept of at least the mother's right to recover has not systematically been stricken down by the arguments advanced by the defendants in this case. See *Gulick v. Chia S. Shu, M.D., P.C.,* 618 F. Supp. 481 (M.D. Pa. 1985) (father's cause of action for negligent infliction of emotional distress from mismanaged childbirth dismissed; no preliminary objections raised to mother's); *Strain v. Ferroni,* 405 Pa. Super. 349, 592 A.2d 698 (1991) (complaint dismissed; no allegation of physical manifestation); *Boarts v. McCord,* 354 Pa. Super. 96, 511 A.2d 204 (1986) (complaint dismissed on statute of limitations grounds; dicta as to insufficient allegation of physical manifestations); *Justice v. Booth Maternity Center,* 345 Pa. Super. 529, 498 A.2d 950 (1985) (father's complaint dismissed; no allegation of bodily harm).

In grappling with this issue, most courts go back to the language used by Justice Nix in his *Sinn v. Burd, supra,* opinion. His emphasis upon the "accident," the "event" and the "violent death" has provided guidance for subsequent judicial rulings on this issue.

In *Amader v. Johns-Manville Corp.,* 514 F. Supp. 1031 (E.D. Pa. 1981), the U.S. District Court for the Eastern District of Pennsylvania dismissed the claims filed by a husband and wife for the negligent infliction of emotional distress caused by the husband's development of the occupational disease, asbestosis. The court held that there was no "sudden and violent accident" within the meaning of *Sinn v. Burd, supra.* In applying Pennsylvania law and, specifically the holding of *Sinn,* the court wrote:

"Clearly, the Supreme Court of Pennsylvania contemplated a discrete and identifiable traumatic event to trigger recovery. Numerous references to this conclusion abounded in the court's opinion." *Amader v. Johns-Manville Corp., supra,* at 1032.

The court noted further, "This very aspect of the event or accident epitomizes the trauma and emotional impact for which plaintiff recovers." *Id.* at 1033.

Other courts have also recognized the importance of the language used in *Sinn,* relying upon it to justify the dismissal of a claim for failure to plead the observance of an identifiable traumatic event. *Mazzagatti v. Everingham by Everingham,* 512 Pa. 266, 516 A.2d 672 (1986); *Yandrich v. Radic,* 495 Pa. 243, 433 A.2d 459 (1981); *Sanfilippo v. Schubert,* 24 D.&C.3d 517 (1982).

Before discussing the various judicial approaches taken toward this issue of identifying a distinct traumatic event which served as the trigger for plaintiff's recovery for emotional distress, it is important to point out some of the policy concerns which underlie the holdings in these cases. In reading and analyzing the numerous opinions dealing with this issue, one is struck by the courts' concern with ferreting out those claims for damages which, while not legally recoverable in Pennsylvania yet, at first glance, appear very similar to the type of claim being made in the instant case. The courts often speak specifically of ensuring that the claim being made is not one for solatium, an action for money damages awarded to survivors to compensate them for their feelings of grief, anguish and bereavement over the loss of a loved one, an action recognized in most civil law nations, but not at common law. *Mazzagatti v. Everingham by Everingham, supra; Yandrich v. Radic, supra,* opinion of Justice Nix in support of affirmance; *Burkit v. Schubert,* 35 D.&C.3d 277 (1984).

In addition, the courts want to pave the way only for recovery for that emotional distress caused by a direct impact of the observance and not one caused by learning of the tragedy after its occurrence, often through a third party. Receipt of the news of the tragedy from others is thought to serve as a buffer against the full impact

of viewing the scene, even when the plaintiff does in fact observe the scene after the event in question. *Mazzagatti v. Everingham by Everingham, supra.* Recovery for viewing the consequences of a negligent act is not permitted in Pennsylvania. *Id.*

In researching the instant issue and reading numerous opinions on the matter, we have found that, by keeping an eye on these policy considerations, we were better able to understand the analyses undertaken and the results reached and, moreover, to reconcile apparently inconsistent results among the cases read.

There certainly are cases which accept the proposition, seemingly advanced by the defendants in the instant case, that there can be no bystander recovery for negligent infliction of emotional distress absent an eyewitnessing of the tragic event, that is, the death or injurious act itself. In *Herman v. Welland Chemical Ltd.*, 580 F. Supp. 823 (E.D. Pa. 1984), a claim brought by the wives of firemen to recover for emotional distress caused by husband's injuries sustained while directing traffic at site of dangerous chemical spill was dismissed as the wives were not present at the scene. See also *Mazzagatti v. Everingham by Everingham, supra;* (mother sued to recover for negligent infliction of emotional distress caused when her 14-year-old child was fatally injured by a driver; mother was not at the scene; she received a call at work and arrived at the scene and saw child; complaint dismissed); *Yandrich v. Radic, supra;* (recovery denied for estate of father whose son was fatally injured after being struck by an automobile; father was not a witness, nor in the vicinity; father arrived at the scene after his injured son had already been taken to the hospital; an evenly divided court affirmed the lower court's sustaining of the demurrer); *Halliday v. Beltz*, 356 Pa. Super. 375, 514 A.2d 906 (1986) (daughter of patient who died during

surgery could not recover; daughter was not present in operating room); *Tackett v. Encke,* 353 Pa. Super. 349, 509 A.2d 1310 (1986) (recovery denied to a mother who sued for emotional distress following her witnessing of her son's reaction, over the period of a month, to a negligently undetected pulmonary fat embolism following a motorcycle accident; she failed to allege a discrete and identifiable traumatic event); *Hoffner v. Hodge,* 47 Pa. Commw. 377, 407 A.2d 940 (1979) (recovery, upon allegations of co-existence, shared sensory planes, by twin sister denied where plaintiff was not an eyewitness to medical procedure upon her twin); *Burkit v. Schubert,* 35 D.&C.3d 277 (1984) (no recovery by a father for the emotional distress suffered when he discovered his daughter bleeding and hysterical after having been bitten by a vicious dog; the court found that he had only viewed consequences of a negligent act); *Sanfilippo v. Children's Hospital,* 24 D.&C.3d 517 (1982) (recovery denied to parents who claimed emotional distress following the misdiagnosis of their six-week old child's severe head injuries after a fall; child was treated and released; child died at home four days later; the parents discovered the body; the court found no allegation of the observation of a tortious act, only a post-accident observation of death).

However, as was aptly noted by Judge Perezous of the Court of Common Pleas of Lancaster County in *Laskas v. Zimmerman,* 39 D.&C.3d 593 (1985), a case in which a father attempted to recover for the emotional distress suffered when he discovered his injured daughter who had been attacked by a dog.

"Within the parameters of the high degree of foreseeability present in *Sinn* and the lower degree present in *Yandrich* lie a myriad of factual possibilities, one of which is exemplified by the posture of the present case." *Id.* at 599.

The courts, in ruling in cases such as the instant one are confronted with situations often of truly tragic and desperate proportions which do not neatly fit into analytical categories. The case law reflects that as the impact rule gave way to the zone of danger test which, in turn, yielded to a somewhat limited standard of foreseeability, so the evolution of this cause of action continues. The following discussion deals with the current status of Pennsylvania law allowing bystander recovery in non-eyewitness cases.

One of the leading non-eyewitness cases applying and interpreting Pennsylvania law on the theory of negligent infliction of emotional distress is *Bliss v. Allentown Public Library,* 497 F. Supp. 487 (E.D. Pa. 1980). In that case, a mother sought to recover for her emotional distress suffered when a statue fell on and seriously injured her child. The mother was not an eyewitness to the accident; however, she heard the statue fall and turned to see her child lying on the floor under the statue.

Applying *Sinn v. Burd, supra,* the court held that her injuries were reasonably foreseeable under the circumstances and denied defendant's motion to dismiss the cause of action. The court answered no to the question of whether, in order to recover for negligent infliction of emotional distress, a sensory and contemporaneous observance of the event must be visual and at the precise moment of injury. Further, the court wrote:

"By pleading that the mother observed her child immediately prior to the accident and that she heard the statue fall upon the child and immediately witnessed the accident scene, the mother had identified herself sufficiently as a 'percipient[4] witness' to state a cause of action for negligent infliction of emotional harm within the mean-

---

4. Percipient is defined as "capable of perception, perceiving." Webster's New International Dictionary 1816 (2nd Ed. 1943).

ing of *Sinn v. Burd.* (citations omitted) To dismiss the mother's claim simply because her eyes were focused in another direction at the exact moment of the accident would defeat the *Sinn v. Burd* policy of avoiding arbitrary results like those created by the 'zone of danger' standard, which the court jettisoned because it barred recovery 'depending upon the position of the plaintiff at the time of the event.' (citations omitted) In the case at bar, denying the mother's claim because of the position of her eyes at the split second that the accident occurred ignores the reality that the entire incident produced the emotional injury for which she seeks redress. The mother's injury, if any, was clearly foreseeable under the circumstances, and it would not be an unreasonable extension of defendant's duty of care to impose liability if plaintiffs prove negligence at trial." *Id.* at 489.

The concept of "percipient witness" has been referred to by other courts as well, albeit in their opinions resulting in the dismissal of plaintiffs' complaint. *Herman v. Welland Chemical Ltd., supra; Burkit v. Schubert, supra.*

Although not specifically decided on grounds encompassing the term "percipient witness," several other Pennsylvania cases have permitted a cause of action to proceed where plaintiff has been able to allege some sort of physical involvement with the precipitating incident—an involvement not too distant from the occurrence in terms of either time or space.

In *Pearsall v. Emhart Industries,* 599 F. Supp. 207 (E.D. Pa. 1984), a woman sued the manufacturer of the smoke detector in her home, alleging that the defective and negligent manufacturing of the device failed to alert her husband and daughter to a fire which had broken out in their home, a fire in which both husband and daughter perished. The mother claimed damages for negligent infliction of emotional distress.

Although the plaintiff was not home at the time of the fire, her cause of action survived a motion to dismiss filed by defendant in which the defendant asserted that plaintiff could not recover because of her inability to allege that she had observed an identifiable, traumatic act caused by the defendant's negligence.

The court recognized that this case fell somewhere in between the facts of *Sinn,* an eyewitness case, and *Yandrich,* a case in which plaintiff received the news from a third person. In *Pearsall,* plaintiff alleged that she had arrived home to find firefighters trying to save her house and the lives of her family. She saw the flames and smelled the smoke. Although she did not witness the deaths of her loved ones, she did stand near their bodies and even tried to lift her daughter, but she was unable to because the body was "real hot." *Id.* at 212. She also saw the bodies carried off of the ambulance at the hospital.

The court held that these allegations were sufficient to enable her to sustain her cause of action and wrote:

"Her emotional distress was not caused merely by others notifying her of the accident. Instead, plaintiff's shock and emotional distress resulted from the direct impact upon her senses of the fire and its aftermath." *Id.*

Similarly in *Laskas v. Zimmerman, supra,* a father was allowed to proceed with his cause of action for emotional distress suffered upon viewing his young daughter immediately after she had been attacked by a dog. In that case, the father was there almost immediately after it had happened, he was the first to arrive at the scene, and he attempted to treat his daughter's wounds.

The court apparently was satisfied that because he had viewed the scene so close in time to the occurrence itself, had learned of the event himself and there was a physical involvement on his part (first aid), the father's experience amounted to a sensory and contemporaneous observance.

A most recent pronouncement in this area of law and legal recovery was handed down by the Superior Court of Pennsylvania in *Love v. Cramer,* 414 Pa. Super. 231, 606 A.2d 1175 (1992). In that case, plaintiff sued to recover for the negligent infliction of emotional distress following her mother's death from heart failure.

As alleged in the complaint, two months prior to decedent's death, plaintiff sought medical treatment for her mother out of a specific concern for her health. Upon consulting with defendant-doctor, the decedent was informed that no testing was necessary. Plaintiff, still concerned, sought other opinions and a further consultation with defendant. Still, no cardiac testing was performed. Six weeks after the initial visit, decedent died of heart failure with plaintiff at her side.

The court reversed the trial court's dismissal of the cause of action and remanded it for further proceedings. The court found that plaintiff had witnessed a discrete and identifiable traumatic event; she was with her mother at the moment of death. The fact that the negligence may have taken place as much as two months earlier was irrelevant at this stage of the litigation. Plaintiff would have to prove proximate cause at trial. In any event, she should be given the opportunity to try to do so.

On this issue the court wrote:

"Although appellant may be unable to ultimately prove a causal connection between her injuries and the doctor's alleged negligence, she should at least be given the opportunity to do so. This is not the simple situation wherein the plaintiff did not observe the traumatic event, but nevertheless sought to recover for emotional distress. Rather appellant witnessed the traumatic event, and the earlier negligence of the doctor. Her recovery, if proven, would be based upon the fact that her emotional injury was

due to her first hand observation of her mother's heart attack, an event caused by Dr. Cramer's negligence, which she had also witnessed. As such, it cannot be said with certainty that appellant will be unable to recover under the law. She should be given the opportunity to prove that Dr. Cramer was negligent, and that his negligence was a proximate cause of her emotional distress. Therefore, the preliminary objections should not have been granted."

Having summarized current Pennsylvania law on this issue, we turn now to an examination of the specific pleadings which are the subject of defendants' preliminary objections. As has already been stated, defendants assert that plaintiffs cannot legally maintain their cause of action because they have failed to allege, and are incapable of alleging, that they witnessed an identifiable, traumatic event which, in turn, triggered their emotional distress and serves as the basis for their right to recover. Thus, defendants would have us conclude that the harm suffered by plaintiffs was not reasonably foreseeable to defendants and cannot serve as the basis for the imposition of liability upon the defendants.

It will make for a clearer analysis if we treat the allegations of plaintiff-mother and plaintiff-father separately.

In paragraph 35 of the complaint, plaintiff-mother alleges:

"(35) On or about May 26, 1990, plaintiff Jennifer L. Flurer was an intimate part of and witnessed by physical experience the death of her child Robert T. Flurer."

The key phrases here are "an intimate part of" and "witnessed by physical experience." As can be gleaned from a reading of the summary provided above, plaintiff has a better chance of recovery as a non-eyewitness bystander where there has been some physical or sensory

involvement with the event, where plaintiff has been a "percipient witness."

Clearly, the core allegations necessary to sustain the cause of action on behalf of plaintiff-mother are present. Plaintiff-mother is alleging that she physically experienced the death of her child—not that she learned of it after the event. She alleges that, like the plaintiffs in *Love v. Cramer, supra, Pearsall v. Emhart Industries Inc., supra,* and *Bliss v. Allentown Public Library, supra,* she was there. And, as with those cases, there may be problems of proof, but those potential problems are not of a nature to concern us at this stage of the litigation. However, upon the issue currently before us, we cannot as a matter of law, hold that plaintiff-mother will not be able to recover under Count III of the complaint.

Plaintiff-father's cause of action, however, is somewhat different. In paragraph 36 of the complaint, plaintiff-father alleges:

"(36) On or about May 26, 1990, plaintiff Robert P. Flurer was in the immediate vicinity of and witnessed the death of his son, Robert T. Flurer."

Plaintiff-father only alleges that he was nearby and that he somehow witnessed the death of his son. Obviously, he cannot allege a physical experience similar to plaintiff-mother's. Any knowledge that plaintiff-father had as to baby Flurer's condition would have necessarily had to have come from either plaintiff-mother, the medical personnel in attendance or the fetal monitor, if, in fact, plaintiff-father was present in the delivery room at 8:20 p.m. on May 24, 1990—an inference which we cannot justifiably make from the complaint as pled. Under any of those scenarios, however, we find that, as a matter of law, plaintiff-father had to have received the news of baby Flurer's death from a third party or an analogous third party in the form of the fetal monitor. In any event,

plaintiff-father's inability to allege the occurrence of an identifiable traumatic event is fatal to his claim; there is no basis, under the analysis of current case law undertaken above, or under the case law of any other jurisdiction, to find that, as to plaintiff-father, emotional injury was reasonably foreseeable on the part of the defendants.

Defendants' preliminary objections in the nature of a demurrer to Count II of plaintiffs' complaint are, therefore, sustained as to plaintiff-father.

As part of the instant preliminary objections, defendants have also asserted that plaintiffs have failed to aver sufficient physical injuries or physical manifestations of their emotional injuries in order to sustain their cause of action set forth in Count III. As a result of our ruling on the matter discussed above, we need only consider this issue as it relates to plaintiff-mother.

In paragraph 37 of the complaint, plaintiff-mother alleges:

"(37) As a direct result of the carelessness, negligence, gross negligence, recklessness, willful misconduct and/or reckless indifference to the welfare of others by the defendants, plaintiff Jennifer L. Flurer and plaintiff Robert P. Flurer have suffered and will suffer mental anguish, anxiety, emotional upset, psychological and functional injury and damages, the full extent of which are not yet known and some or all of which may be permanent in nature."

Plaintiffs, in their brief, do not contest the necessity of an allegation of physical harm or physical manifestation of the emotional harm as part of their claim. Rather, they contend that the allegation set forth in paragraph 37 satisfies current Pennsylvania law on this issue and is sufficient to permit their complaint to survive the challenge of defendants' preliminary objections. We agree.

Restatement (Second) Torts, §436A deals with "Negligence Resulting in Emotional Disturbance Alone." It was followed and adopted by the Superior Court in *Banyas v. Lower Bucks Hospital,* 293 Pa. Super. 122, 437 A.2d 1236 (1981), and has provided the basis for numerous other Pennsylvania court opinions dealing with this issue. It provides as follows:

"§436A. *Negligence Resulting in Emotional Disturbance Alone—*

"If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance."

Comment c to this section provides elucidation on what type of physical harm or compensable damage will make an emotional injury legally actionable.

"(1) Comment c: 'The rule stated in this section applies to all forms of emotional disturbance, including temporary fright, nervous shock, nausea, grief, rage and humiliation. The fact that these are accompanied by *transitory, non-recurring physical phenomena,* harmless in themselves, such as dizziness, vomiting, and the like, does not make the actor liable where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm. On the other hand, *long, continued nausea or headaches* may amount to physical illness, which is bodily harm; and even long continued mental disturbance, as for example in the case of *repeated* hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character. This becomes a medical or psychiatric problem,

rather than one of law.'" Restatement (Second) Torts, §436A. (emphasis provided by the court)

Using the Restatement (Second) §436A and comments thereto for guidance, Pennsylvania courts have, in ruling upon preliminary objections to claims for negligent infliction of emotional distress, examined pleadings in search of language which would support the conclusion that the physical ills therein set forth were non-transitory and recurring, continued or repeated. It is only by including such language that a plaintiff can hope to get past a demurrer.

Perhaps the most complete set of allegations of physical manifestations of emotional injuries is contained in the complaint filed by plaintiff in *Crivellaro v. Pennsylvania Power & Light Co.*, 341 Pa. Super. 173, 491 A.2d 207 (1985), a case in which plaintiff, a patient at a psychiatric care facility, brought an action against the facility's operator for negligently inflicting emotional distress upon her while under his care.

The court reversed and remanded the case back to the lower court, holding that defendants' demurrer to the cause of action had been improperly granted. In particular, defendant had challenged the sufficiency of plaintiffs' allegations of physical harm or manifestations thereof. The court stated that it could not agree with the trial court which had found that appellant's complaint did not contain language of the severity required by Restatement (Second) §436A. It found that it did indeed and quoted, with approval, paragraph 59 of the amended complaint as follows:

"(59) ... Plaintiff Louise Crivellaro has suffered from severe emotional distress and related physical trauma, including intense headaches, uncontrollable shaking, involuntary hyperventilation and shortness of breath, frequent nightmares, inability to control bowels, upset stom-

ach, and an intense tightening of the muscles in the neck, back and chest which produced severe pain lasting several days following each incident."

This language was also cited by the court in *Abadie v. Riddle Memorial Hospital,* 404 Pa. Super. 8, 589 A.2d 1143 (1991), in affirming that lower court's sustaining of preliminary objections to plaintiffs' complaint on the grounds that it lacked averments of physical harm. The court specifically referred to plaintiff's failure to plead the *nature* of her physical ills or injuries.

Perhaps less detailed, but equally satisfactory legally were the averments of physical manifestations set forth in the complaint filed in *Love v. Cramer, supra.* The court found plaintiff's allegations of depression, nightmares, stress and anxiety sufficient to overcome defendant's preliminary challenge.

In the instant case, although approaching neither the breadth nor the detail of the approved language cited above from *Crivellaro v. Pennsylvania Power & Light Co., supra,* we do recognize that, in the ordinary sense of certain of the terms relied upon by plaintiff-mother to plead her injuries, the conditions described may have physical components. We, therefore, cannot hold as a matter of law that plaintiff-mother will be unable to recover under Count III of the complaint.

Examining paragraph 37, we find that plaintiff-mother has alleged that she is suffering from anxiety. Anxiety is defined as "abnormal apprehension and fear often accompanied by *physiological* signs." New Merriam-Webster Dictionary 49 (1989). Similarly, the "functional" injury and damage pled by plaintiff-mother, as contrasted with the psychological harm also alleged, can be said to be organic or physical in nature or "pertaining to the natural or proper action of a *bodily* part in a living thing." *Id.* at 306. (emphasis provided by court)

Moreover, we find that plaintiff-mother has pled the continuing or recurring nature of these injuries. Based upon the foregoing, we hold that plaintiff-mother has satisfactorily pled this element of her cause of action for negligent infliction of emotional distress.

Defendants' preliminary objections in the nature of a demurrer are, therefore, denied as to plaintiff-mother.

## MOTION TO STRIKE—

## CLAIM FOR PUNITIVE DAMAGES

Defendants have also filed preliminary objections in the nature of a motion to strike plaintiffs' claim for punitive damages set forth in their cause of action for baby Flurer's wrongful death contained in Count I of the complaint. For the following reasons, we grant defendants' motion and order that the objectionable claim be stricken from the complaint.

Pennsylvania Rule of Civil Procedure 1017(b)(2)(1991) permits a party to file a preliminary objection in the nature of a motion to strike off a pleading "because of lack of conformity to law or rule of court or because of scandalous or impertinent matter."

The defendants in the instant matter argue that plaintiffs' claim for punitive damages does not comply with Pa.R.C.P. 1019(a) requiring that the material facts upon which a cause of action is based shall be concisely set forth in the complaint. In addition, defendants assert that plaintiffs' claim for punitive damages does not comport with Pennsylvania case law on the issue of the nature of the offensive behavior which must be pled before a plaintiff will be entitled to punitive damages.

Pennsylvania courts have consistently held that punitive damages will only be awarded to punish conduct "that

is so outrageous as to rise to the level of intentional, willful, wanton or reckless conduct." *Abadie v. Riddle Memorial Hospital, supra* at 15, 589 A.2d at 1146; *Houston v. Texaco Inc., supra.* Punitive damages, however, will not be awarded to compensate a plaintiff for injuries sustained only as a result of a defendant's ordinary negligence. *Id.*

In *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984), the Pennsylvania Supreme Court adopted Restatement (Second) of Torts §908(2) which provides as follows:

"(2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant." (emphasis added)

As plaintiffs in the case at bar have not pled an evil motive on the part of any of the defendants presently before us, we must focus on whether plaintiffs have alleged behavior constituting defendants' "reckless indifference to the rights of others."

Reckless indifference sufficient to create an issue of fact on the matter of punitive damages has been described as existing "where the actor knows, or has reason to know ... of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk." *SHV Coal v. Continental Grain Co.,* 526 Pa. 489, 587 A.2d 702 (1991), quoting *Martin*

*v. Johns-Manville Corp.*, 508 Pa. 154, 170-173, 494 A.2d 1088, 1097-1098 (1985).

We find that plaintiffs have failed to plead behavior on the part of the defendants which rises to satisfy this standard. Nor do we find that plaintiffs are capable of pleading the requisite behavior under the circumstances of this case. We, therefore, grant defendants' motion to strike plaintiffs' claim for punitive damages from Count I of the complaint.

## MOTION TO STRIKE—

### REFERENCES TO "GROSS NEGLIGENCE" AND "RECKLESSNESS"

Defendants have filed preliminary objections in the nature of a motion to strike alleging that references to defendants' alleged "gross negligence" and/or "recklessness" fail to comply with the law and are, under the facts as alleged in plaintiffs' complaint, scandalous or impertinent. We agree.

Pennsylvania common law recognizes no degrees of negligence. *Ferrick Excavating v. Senger Trucking Co.*, 506 Pa. 181, 484 A.2d 744 (1984). We, therefore, grant defendants' motion to strike references to "gross negligence" from plaintiffs' complaint.

Furthermore, having ruled that plaintiffs' claim for punitive damages is to be stricken from the complaint, any reference to defendants' "recklessness" is impertinent or not material to the issue at hand. *Berkebile v. Nationwide Insurance Co.*, 6 D.&C.3d 243 (1977). Hence, references to defendants' recklessness must likewise be stricken.

In conclusion, we hereby grant defendants' motion to strike references to "gross negligence" and "recklessness" from the complaint.

## MOTION TO STRIKE OR
## MOTION FOR MORE SPECIFIC PLEADING

*Motion to strike subparagraphs 21(a), 21(b) and 21(c) of plaintiffs' complaint or, in the alternative, a motion for a more specific pleading.*

Defendants doctor and Pocono Ob-Gyn have filed preliminary objections to subparagraphs 21(a), 21(b) and 21(c) of plaintiffs' complaint asserting that they contain general allegations of negligence and vague conclusions of law and, therefore, must be stricken. In the alternative, defendants doctor and Pocono Ob-Gyn request that we require plaintiffs to plead their causes of action with more specificity in this regard.

Paragraph 21 provides as follows in the relevant subparagraphs:

"(21) The aforesaid injuries and subsequent death of plaintiffs' decedent was caused by the carelessness, negligence, (gross negligence) and (recklessness)[5] of defendants, both generally and in the following particular respects:

"(a) failing to adhere to the standard of medical care in the community;

"(b) failing to adhere to the standard of practice within the defendants' specialties;

"(c) failing to exercise proper skill, diligence and care under the circumstances."

It is well-established that Pennsylvania courts view this vague and all-inclusive language with disfavor. *Connor v. Allegheny General Hospital,* 501 Pa. 306, 461 A.2d 608 (1983). Preliminary objections of the nature instantly filed are the judicially sanctioned means of challenging

---

5. Language in parentheses has already been stricken by the court in an earlier part of this opinion.

this language and prevent the filing of new causes of action following the expiration of the statute of limitations. *Id.* at 311, 461 A.2d at 602, n.3. Preliminary objections to this type of language in a complaint have been previously sustained by this court resulting in the striking of the objected-to language from the complaint. *Neil J. Bonner v. Norman Fayne, et al.,* No. 2006 Civil 1991 (Monroe County, March 6, 1992).

Based upon the foregoing, we sustain defendants' preliminary objections. Subparagraphs 21(a), 21(b) and 21(c) shall be stricken from the complaint.

ORDER

And now, August 7, 1992, it is ordered as follows:

(1) Preliminary objections in the nature of a demurrer filed by the defendants, Pocono Medical Center, Monroe Emergency Physicians, P.C., and Pocono Obstetrical and Gynecological Associates, P.C., to Count III of plaintiffs' complaint are denied as to plaintiff-mother, Jennifer L. Flurer.

(2) Preliminary objections in the nature of a demurrer filed by the defendants, Pocono Medical Center, Monroe Emergency Physicians, P.C., and Pocono Obstetrical and Gynecological Associates, P.C., to Count III of plaintiffs' complaint are sustained as to plaintiff-father, Robert P. Flurer.

(3) Preliminary objections in the nature of a motion to strike plaintiffs claim for punitive damages from Count I of the complaint are sustained.

(4) Preliminary objections in the nature of a motion to strike in reference to "gross negligence" and "recklessness" from plaintiffs' complaint are sustained.

(5) Preliminary objections in the nature of a motion to strike subparagraphs 21(a), 21(b) and 21(c) from plaintiffs' complaint are sustained.